**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ROBERT BONZANI, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| GOSHEN HEALTH SYSTEM, INC. and | ) | |
| GOSHEN HOSPITAL ASSOCIATION, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff, Robert Bonzani, M.D., by counsel, for his Complaint for Declaratory Judgment and Damages against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc., states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Robert Bonzani, M.D. ("Dr. Bonzani") is a resident of Will County, Illinois.

2.     Upon information and belief, Goshen Health System, Inc. ("Goshen Health") is an Indiana non-profit corporation with its principal place of business located in Goshen, Elkhart County, Indiana.

3.     Upon information and belief, Goshen Hospital Association, Inc. ("Goshen Hospital") is an Indiana non-profit corporation with its principal place of business located in Goshen, Elkhart County, Indiana.

4.     Upon information and belief, Goshen Hospital is a subsidiary of Goshen Health.

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) as the defendants both reside in the Northern District of Indiana and all events giving rise to this lawsuit occurred within the Northern District of Indiana.

## FACTS

7.      Dr. Bonzani is a urologist with over 20 years of practice experience.

8.      Dr. Bonzani has practiced medicine in Chicago, Illinois for the majority of his career.

9.      In 2016, Dr. Bonzani began discussing with Goshen Health an opportunity to practice urology in Goshen, Elkhart County, Indiana.

10.     As part of the interview process, Dr. Bonzani fully disclosed to Goshen Health both his personal and professional history.

11.     During the course of recruiting Dr. Bonzani, Goshen Health made certain representations to Dr. Bonzani regarding Goshen Health and Dr. Bonzani's medical career at Goshen Health.

12.     Specifically, Goshen Health made the following representations to Dr. Bonzani:

A.      Dr. Bonzani would be the head urologist;

B.      In addition to a general urology practice, Goshen Health would supply Dr. Bonzani with the supplies and support he needed to perform robotic and more complex surgeries that were not being performed at Goshen Hospital at that time.

C.     Dr. Bonzani would be joining an IU Indiana University Hospital, with its attendant academic affiliation, privileges, and prestige, associated with this affiliation, including facilitation for article publishing and teaching duties.  This affiliation was evidenced by the existence of the IU logo on the Goshen Hospital building at that time.

13.     Dr. Bonzani relied upon these representations in making the decision to accept a position with Goshen Health.

14.     Prior to signing an employment agreement with Goshen Health, Dr. Bonzani went through a credentialing process with Goshen Hospital.  Having privileges at Goshen Hospital was a condition of Dr. Bonzani's employment with Goshen Health.

15.     On or before December 14, 2016, Goshen Hospital approved Dr. Bonzani's application for privileges.

16.     On or about December 14, 2016, Dr. Bonzani signed an employment agreement with Goshen Health ("Employment Agreement").  A true and accurate copy of the Employment Agreement is attached to this Complaint as Exhibit A.

17.     At the same time, Dr. Bonzani applied for an Indiana medical license and relocated his wife and step-daughter from Chicago to Goshen, Indiana.

18.     Dr. Bonzani considered this move to Goshen as a new start in a small town environment for himself and his family.

19.     Unbeknownst to Dr. Bonzani at that time his application for privileges at Goshen Hospital was approved, he signed the Employment Agreement and he applied for an Indiana medical license, Goshen Health knew that it employed a small but influential group of "naysayer physicians" with predisposed hostility towards Dr. Bonzani.

20.     Dr. Bonzani began working for Goshen Health on March 13, 2017.

21.     By the summer of 2017, Dr. Bonzani was maintaining a busy urology practice at Goshen Health and was being referred a very high number of complex cases.

22.     Around that time, Goshen Health pressured Dr. Bonzani to start performing surgeries on patients whom Dr. Bonzani had not previously recommended for surgical treatment.

23.     Dr. Bonzani expressed concerns to Goshen Health about the direction it wanted him to go.

24.     Ultimately, Dr. Bonzani succumbed to Goshen Health's pressure and began scheduling and performing more complex surgical procedures for his patients.

25.     While this was happening, Dr. Bonzani began to experience difficulty getting his patients scheduled on Goshen Hospital's surgical calendar.

26.     Goshen Hospital routinely gave Dr. Bonzani and his patients the least desirable surgical spots.  At times, Goshen Hospital altogether failed to provide Dr. Bonzani with adequate surgery time to accommodate the additional surgical procedures he was requested to perform.

27.     Dr. Bonzani also noticed inconsistency in the competency of the afternoon surgical staff at Goshen Hospital.  He became concerned that some staff members were not capable of handling complex procedures.

28.     Dr. Bonzani repeatedly voiced his concerns about staff competency to Goshen Hospital, Goshen Health, and The Sullivan Group, a consulting firm in Illinois that was brought in to address these very issues.

29.     Despite Dr. Bonzani's concerns, Goshen Hospital and Goshen Health made no changes to its procedures or staffing.

30.    After his concerns had been dismissed, a patient died at Goshen Hospital during a complicated surgery being performed by Dr. Bonzani.

31.    Specifically, during a complex robotic surgery, an emergency arose when, following an afternoon shift change, the relieving nurse, a Goshen Hospital employee, could not adequately perform her role as scrub nurse because she lacked the training on how to load robotic clip appliers.   Other physicians, including Goshen Hospital's Chief of Surgery, Dr. Denise Murphy, tried to assist without success.

32.    Following the surgery, in October 2017, Dr. Murphy recommended that Dr. Bonzani's surgical privileges at Goshen Hospital be suspended due to Dr. Bonzani's failure to handle the complex robotic surgery, despite the fact she failed as well.

33.    After Dr. George Kim, President of the Medical Staff at Goshen Hospital, agreed with Dr. Murphy's recommendation, Dr. Bonzani's suspension was carried out by Goshen Hospital's Chief Medical Officer at the time, Dr. Larry Allen – effective October 31, 2017.

34.    On November 8, 2017, the Medical Executive Committee of Goshen Hospital decided to continue Dr. Bonzani's surgical suspension pending an investigation of this surgical event.

35.    On November 13, 2017, Dr. Bonzani received a letter that informed him of some of his rights, including his right to a hearing if the precautionary suspension lasted more than fourteen (14) days.   The notice stated that the hearing would address the surgical suspension resulting from the single surgical event.

36.    The November 13, 2017 letter did not notify Dr. Bonzani of his right to an expedited hearing or otherwise notify Dr. Bonzani of Goshen Hospital's Medical Staff Bylaws ("Medical Staff Bylaws").

37.     Shortly thereafter and more than 14 days from the beginning of his surgical suspension, Dr. Bonzani requested an expedited hearing, a right provided to him in the Medical Staff Bylaws. A true and accurate copy of the Medical Staff Bylaws is attached to this Complaint as Exhibit B.

38.     Also around that time, the Medical Executive Committee of Goshen Hospital formed an Investigative Committee that was tasked with initiating Peer Review of Dr. Bonzani.

39.     Dr. Bonzani participated in all levels of the Peer Review process and offered evidence to show that he has been a competent urologist serving his patients well for many years.

40.     In fact, on his own, Dr. Bonzani initiated a peer review of himself and found that in his opinion only nine cases – out of 96 cases – were worth examining further.

41.     Dr. Bonzani then provided the results of his own peer review to Dr. Allen.

42.     Shortly thereafter, Dr. Bonzani received a notice that the Peer Review would include not only the original surgical event, but also the other nine cases that Dr. Bonzani had presented to Dr. Allen.

43.     Specifically, on November 24, 2017, Dr. Bonzani received a Notice of Hearing from Dr. Kim that scheduled his "expedited" hearing for November 29, 2017.  This was twenty-nine (29) days after Goshen Hospital initiated the precautionary suspension.  This notice expanded the reason underlying the precautionary suspension to include both the single surgical event and other cases being peer reviewed.

44.     The Peer Review process included sending information to an outside reviewer.

45.     After receiving the report from the outside reviewer, Dr. Bonzani challenged the report on the basis the first reviewer had just five years of practice experience; the first reviewer was only provided information on the nine cases Dr. Bonzani provided to Dr. Allen (and not the

other 87 cases showing the quality of Dr. Bonzani's work on mostly complex cases); and the first reviewer was only provided the inpatient charts instead of all of the documents necessary to complete a comprehensive review of each case (i.e. x-rays, clinic notes, and interviews).

46.     The Investigative Committee agreed with Dr. Bonzani's challenges of the outside reviewer's report.

47.     Rather than conclude the peer review process in Dr. Bonzani's favor, the Investigative Committee decided to order a new Peer Review report, a decision not authorized in the Medical Staff Bylaws.

48.     The Investigative Committee's decision resulted in the need for Goshen Hospital to reschedule the expedited hearing Dr. Bonzani had requested.

49.     On December 7, 2017, Dr. Bonzani received a notice that rescheduled the hearing for December 13, 2017.  This was forty-three (43) days after Goshen Hospital initiated the precautionary suspension.  This notice stated that the hearing would address both the surgical suspension resulting from the single surgical event and other cases being peer reviewed.

50.     By rescheduling the hearing, Goshen Hospital denied Dr. Bonzani the expedited hearing he had requested under the Medical Staff Bylaws.

51.     Goshen Hospital's delay also unnecessarily triggered the submission of a report to the National Practitioner Data Bank.

52.     On December 13, 2017, the Hearing Committee conducted Dr. Bonzani's hearing. At the beginning of the hearing, Dr. Bonzani was advised by the Hearing Committee that despite what the Notice of Hearing stated, the hearing would be limited to the single surgery that triggered the suspension of his surgical privileges.  Given what the notice stated, Dr. Bonzani

was prepared to address at the hearing all of the cases reviewed in the Peer Review report.  The Hearing Committee denied Dr. Bonzani this opportunity.

53.     The hearing was not expedited as Dr. Bonzani requested, having taken place 43 days after the suspension had been initiated.

54.     Upon information and belief, Goshen Hospital unilaterally limited the scope of the hearing because it was waiting on the results of a second outside Peer Review report.

55.     On December 26, 2017, Goshen Hospital sent Dr. Bonzani the second Peer Review report.  This report was extremely critical of Dr. Bonzani and was inconsistent with the first outside Peer Review report.

56.     On December 29, 2017, the Hearing Committee decided in favor of Dr. Bonzani by exonerating him of any wrongdoing or surgical incompetence relating to the surgical event and by recommending that the precautionary surgical suspension be lifted.

57.     Ignoring the Hearing Committee's decision, the Medical Executive Committee decided on December 29, 2017 to increase Dr. Bonzani's reprimand from a surgical suspension to a hospital suspension.  Upon information and belief, the Medical Executive Committee based its decision on the second Peer Review report.

58.     The Medical Executive Committee then scheduled a meeting on January 9, 2018 at which time it would make a final decision regarding Dr. Bonzani's suspension.

59.     On January 2, 2018, just seven days before the Medical Executive Committee meeting, Alan Weldy, General Counsel for Goshen Health, and Goshen Health's CEO, Randy Christophel, confronted Dr. Bonzani in his office.  During the meeting, Dr. Bonzani was told that "it is time to transition you out of Goshen Hospital."

8

60.     During this meeting, Randy Christophel referred to the second Peer Review report and told Dr. Bonzani he would no longer be employed by Goshen Health.  According to Goshen Health, this decision was based on the second Peer Review report, the extended length of time that the Peer Review process was taking, and Goshen Health's allegation that Goshen Health physicians did not trust Dr. Bonzani's work and did not want to refer him patients.

61.     Upon information and belief, known to Goshen Health and Goshen Hospital at the time but unknown to Dr. Bonzani, the second outside Peer Review was a sham.

62.     Upon information and belief, Goshen Health and Goshen Hospital knowingly tainted the peer review process by retaining a company to perform the second Peer Review that acted as a hired gun instead of an unbiased third party.

63.     Upon information and belief, the second peer review company is in the business of "decision-support" for hospitals instead of unbiased third party peer reviews of physicians. This was reflected by the fact the second peer review company improperly attacked Dr. Bonzani's methods, ignored the high level of complex cases Dr. Bonzani handled, selectively scrutinized certain patient outcomes (while ignoring others), and failed to have all of the necessary information to perform a comprehensive review.

64.     Dr. Bonzani also later learned that Goshen Health's allegation that Goshen Health physicians did not trust him or want to refer him patients was false.

65.     Upon information and belief, Goshen Health physicians were very happy with Dr. Bonzani's work and would have continued to refer him patients had they not been told by Goshen Health that Dr. Bonzani was not taking new patients.

66.     During the January 2, 2018 meeting, Goshen Health presented Dr. Bonzani with the following two options: (1) voluntarily choose to leave Goshen Health employment with

severance pay; or (2) face involuntarily termination from Goshen Health without severance pay once the Medical Executive Committee followed the lead of the second Peer Review report at its meeting on January 9, 2018.

67.     Dr. Bonzani was given less than one week to make his decision.

68.     Immediately following this blindside, Dr. Bonzani became despondent and suffered a mental health event.

69.     Two days later, on January 4, 2018, while suffering from a mental health event, Dr. Bonzani took a gun from his colleague's desk drawer with the intent of ending his own life after meeting with his attorney.

70.     Also on January 4, 2018, Dr. Bonzani met with his attorney.  Dr. Bonzani never mentioned to his attorney before, during or after the meeting that he had a loaded gun in his car and that he intended to end his own life with it.

71.     Fortunately, after meeting with his attorney, Dr. Bonzani drove back to Goshen Health, went into his office, took the gun out of his bag, and asked his medical assistant to take the gun from him before he hurt himself.

72.     After the medical assistant removed the gun, Goshen Health's human resources department was called for guidance.  Shockingly, Goshen Health's human resources department took no action for Dr. Bonzani and his mental state.

73.     Goshen Health also did nothing to alert Dr. Bonzani's wife of the gun incident or of the fact that he was despondent to the point of harming himself.

74.     Upon information and belief, the only action Goshen Health took was to change the office door locks to bar Dr. Bonzani's re-entry.

75.     From January 2, 2018 until he ultimately signed a separation agreement on January 8, 2018, Dr. Bonzani was distraught, filled with anxiety and terror, and completely debilitated by his mental state resulting from the actions of Goshen Health and Goshen Hospital. During this time, except for being driven to his therapist, Dr. Bonzani did not go outside or perform any regular activities.  He interacted minimally with his wife and step-daughter.

76.     From the time he returned the gun to the date he signed a separation agreement, Dr. Bonzani spent his time curled up in a ball on the couch at his home crying, except that Dr. Bonzani's wife was able to get Dr. Bonzani out of the house twice to see his therapist.

77.     Dr. Bonzani did not tell his therapist about the gun incident.

78.     On January 8, 2018, Dr. Bonzani's attorney at the time e-mailed him a copy of Goshen Health's separation agreement ("Separation Agreement").  A true and accurate copy of the Separation Agreement is attached to this Complaint as Exhibit C.

79.     Dr. Bonzani signed the Separation Agreement at home on January 8, 2018 – the day before Dr. Bonzani had been led to believe the Medical Executive Committee would find against him resulting in his involuntary termination from Goshen Health without severance pay.

80.     Dr. Bonzani did not negotiate or read the Separation Agreement before signing it. As a result, the Separation Agreement does not address standard issues arising from a physician's separation such as tail insurance coverage.  Instead, Dr. Bonzani simply faxed the signature page back to his attorney.

81.     At the time he signed the agreement, Dr. Bonzani was unable to understand in a reasonable manner the nature and effect of signing the Separation Agreement.  Similarly, at the time he signed the agreement, Dr. Bonzani had no understanding of the terms contained in the Separation Agreement due to his mental state.

82. The Separation Agreement defined "Goshen Health" to include parents, subsidiaries, divisions, affiliates, agents, employees, stockholders, directors, officers, predecessors and successors of Goshen Health System, Inc.

83. The Separation Agreement contained a waiver and release provision by which Dr. Bonzani purported to waive and release his right to sue Goshen Hospital and its medical staff members, as well as Goshen Health and its employees for claims arising out of Dr. Bonzani's relationship with Goshen Health and Goshen Hospital.

84. The Separation Agreement contained a confidentiality provision, which prohibited Goshen Health from disclosing or discussing the existence of the Separation Agreement or any details of the same, except as may be required by compulsion of law.

85. The Separation Agreement contained a non-disparagement provision, which prohibited Goshen Health from making any statement that would reasonably harm or was reasonably calculated to harm Dr. Bonzani's business or reputation, except as may be required by compulsion of law.

86. The Separation Agreement contained an integration provision, which represented that the Separation Agreement encompassed the entire understanding between Goshen Health and Dr. Bonzani.

87. On January 23, 2018, Goshen Health and Goshen Hospital submitted a report to the National Practitioner Data Bank ("NPDB Report") relating to Dr. Bonzani.

88. Upon information and belief, employees of Goshen Health and Goshen Hospital drafted and submitted the NPDB Report.

89.     Prior to signing the Separation Agreement, Dr. Bonzani was not aware of the contents of any report to the National Practitioner Data Bank or the actual wording of the NPDB Report.

90.     The Separation Agreement contains no reference to the submission of the NPDB Report.

91.     The NPDB Report references "suspension of clinical privileges" on October 31, 2017 as the basis for the action and represents that the action became effective on December 1, 2017.  Given this effective date, if Goshen Health and Goshen Hospital were intending to submit a NPDB report, it was required by law to be submitted by December 31, 2017.

92.     Goshen Health and Goshen Hospital did not submit a NPDB report regarding Dr. Bonzani by December 31, 2017.

93.     By not submitting a NPDB report by December 31, 2017, and certainly by January 8, 2018, the date Dr. Bonzani signed the Separation Agreement, Goshen Health and Goshen Hospital led Dr. Bonzani to believe that no such NPDB report would be submitted.

94.     The NPDB Report contains false and misleading statements. Specifically, the NPDB Report wrongly states that there was an immediate threat to health and safety of the patients of Goshen Hospital.  It is also misleading by stating that Dr. Bonzani requested and received a hearing without stating that Dr. Bonzani was denied an expedited hearing or, more importantly, that the hearing resulted in an outcome favorable to Dr. Bonzani.  By not making any reference to the outcome of the hearing, the NPDB Report is misleading since it uses language to imply the hearing outcome was not favorable to Dr. Bonzani.

95.     Finally, despite citing the triggering event as having occurred on December 1, 2017, the NPDB Report references events that occurred after this date that were not required to be included by law.

96.     Upon information and belief, Goshen Health and Goshen Hospital knew the NPDB Report would cause damage to Dr. Bonzani's professional reputation and medical practice.

97.     To try and mitigate the harm caused by the NPDB Report, Dr. Bonzani filed on February 12, 2018 a statement objecting to the NPDB report.

98.     Despite his attempts to mitigate the damage caused by the NPDB Report, Dr. Bonzani has not been able to find any work as a urologist until he was forced to open his own medical practice in Chicago, Illinois at great expense to himself.  Even after opening his own office, Dr. Bonzani has not been able to procure staff privileges at any hospital or same day surgery center.  This has resulted in a crippling financial situation for any surgeon like Dr. Bonzani who requires these privileges to perform operations.  The NPDB Report also has alarmed health insurance carriers to the point of many of them refusing to admit Dr. Bonzani to their network of healthcare providers, further eroding Dr. Bonzani's ability to care for patients.

99.     As a result, Dr. Bonzani has suffered and will continue to suffer damages as a result of the actions of Goshen Health and Goshen Hospital.

### COUNT I – REQUEST FOR DECLARATORY JUDGMENT

100.    Dr. Bonzani incorporates the allegations of Paragraphs 1 through 99 of this Complaint as if fully restated in this paragraph.

101.    Pursuant to the Uniform Declaratory Judgment Act, I.C. 34-14-1-1, *et seq*., the Federal Declaratory Judgment Act 28 U.S.C. § 2201, *et seq*., and Rule 57 of the Federal Rules of

Civil Procedure, Dr. Bonzani seeks a declaratory judgment from this Court regarding the enforceability of the Separation Agreement.

102.    An actual controversy exists between Dr. Bonzani and Goshen Health and Goshen Hospital regarding the enforceability of the Separation Agreement.

103.    Goshen Health and Goshen Hospital have taken the position that the Separation Agreement is enforceable in all respects.

104.    Dr. Bonzani contends that Goshen Health and Goshen Hospital are precluded from enforcing the Separation Agreement against him, including the "Waiver and Release" provision, since Dr. Bonzani lacked the capacity to contract at the time he signed the Separation Agreement.

105.    In addition, Dr. Bonzani contends that Goshen Health and Goshen Hospital are precluded from enforcing the Separation Agreement against him because Goshen Health and Goshen Hospital fraudulently induced him to enter into the Separation Agreement.

106.    In the alternative, even if Dr. Bonzani had the capacity to contract, Goshen Health and Goshen Hospital first materially breached the "Confidentiality" provision of the Separation Agreement by submitting the NPDB Report that contained details of the Separation Agreement. Further, even if Dr. Bonzani had the capacity to contract, Goshen Health and Goshen Hospital first materially breached the "No Disparagement" provision of the Separation Agreement by submitting a disparaging, misleading, factually inaccurate, incomplete and malicious NPDB Report.

107.    Dr. Bonzani seeks a declaration from this Court that the Separation Agreement is not enforceable under Indiana law.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, pursuant to the Uniform Declaratory Judgment Act, I.C. 34-14-1-1, *et seq*., the Federal Declaratory Judgment Act 28 U.S.C. § 2201, *et seq*., and Rule 57 of the Federal Rules of Civil Procedure, respectfully requests that the Court enter a declaratory judgment against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc., which provides as follows:

A.      At the time he executed the Separation Agreement, Dr. Bonzani was of unsound mind and had no reasonable understanding of the Separation Agreement's terms due to his instability.

B.      At the time he executed the Separation Agreement, Dr. Bonzani lacked the requisite mental capacity to contract.

C.      The Separation Agreement, including the "Waiver and Release" provision contained therein, is void and unenforceable.

D.      Goshen Health and Goshen Hospital fraudulently induced Dr. Bonzani to enter into the Separation Agreement.

E.      Even if Dr. Bonzani had the capacity to contract, Goshen Health and Goshen Hospital first materially breached the "Confidentiality" provision of the Separation Agreement by submitting the NPDB Report that contained details of the Separation Agreement.

F.      Even if Dr. Bonzani had the capacity to contract, Goshen Health and Goshen Hospital first materially breached the "No Disparagement" provision in the Separation Agreement by submitting a disparaging, misleading, factually inaccurate, incomplete and malicious NPDB Report.

G.      By virtue of these material breaches, Goshen Health and Goshen Hospital are precluded from enforcing the Separation Agreement.

H.     Dr. Bonzani is entitled to an award of costs; and

I.     Dr. Bonzani is entitled to all other just and proper relief.

## COUNT II – BREACH OF CONTRACT VERSUS GOSHEN HEALTH AND GOSHEN HOSPITAL

108.     Dr. Bonzani incorporates the allegations of Paragraphs 1 through 107 of this Complaint as if fully restated in this paragraph.

109.     As more fully described above, Goshen Health and Goshen Hospital breached the Separation Agreement, specifically the "Confidentiality" provision in the Separation Agreement.

110.     As more fully described above, Goshen Health and Goshen Hospital further breached the Separation Agreement, specifically the "No Disparagement" provision in the Separation Agreement.

111.     As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc., in an amount that includes Plaintiff's compensatory damages, costs, and all other just and proper relief.

## COUNT III – BREACH OF CONTRACT VERSUS GOSHEN HOSPITAL

112.     Dr. Bonzani incorporates the allegations of Paragraphs 1 through 111 of this Complaint as if fully restated in this paragraph.

113.     Goshen Hospital breached its Medical Staff Bylaws by failing to provide Dr. Bonzani with the expedited hearing he requested and by unilaterally deciding to order a second Peer Review report from a known biased peer review company.

114.    Goshen Hospital further breached its Medical Staff Bylaws by surreptitiously broadening the reason for the suspension to include Dr. Bonzani's entire operative history at Goshen Hospital, and by not affording him the opportunity to request and receive a hearing on this broader issue.

115.    As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendant, Goshen Hospital Association, Inc. in an amount that includes Plaintiff's compensatory damages, costs, and all other just and proper relief.

## COUNT IV – DISPARAGEMENT VERSUS GOSHEN HEALTH AND GOSHEN HOSPITAL

116.    Dr. Bonzani incorporates the allegations of Paragraphs 1 through 115 of this Complaint as if fully restated in this paragraph.

117.    Goshen Health and Goshen Hospital published false statements about Dr. Bonzani's medical practice in the NPDB Report.

118.    By publishing these false, misleading statements in the NPDB Report, Goshen Health and Goshen Hospital intended to cause harm, or should have recognized that these statements were likely to cause harm, to Dr. Bonzani's economic interest in his medical practice.

119.    As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc., in an amount that includes Plaintiff's compensatory damages, costs, and all other just and proper relief.

## COUNT V – DEFAMATION VERSUS GOSHEN HEALTH
## AND GOSHEN HOSPITAL

120.    Dr. Bonzani incorporates the allegations of Paragraphs 1 through 119 of this Complaint as if fully restated in this paragraph.

121.    Goshen Health and Goshen Hospital published false statements about Dr. Bonzani's medical practice in the NPDB Report with the intent to do him harm.

122.    Goshen Health's and Goshen Hospital's published statements about Dr. Bonzani constitute defamation *per se*, as well as *per quod*.

123.    As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc., in an amount that includes Plaintiff's compensatory damages, costs, and all other just and proper relief.

## COUNT VI – FRAUD IN THE INDUCEMENT VERSUS GOSHEN HEALTH

124.    Dr. Bonzani incorporates the allegations of Paragraphs 1 through 123 of this Complaint as if fully restated in this paragraph.

125.    As more fully described above, Goshen Health made certain representations to Dr. Bonzani to induce him to relocate his medical practice and his family from Chicago to Goshen, Indiana.

126.    The representations made by Goshen Health were false at the time they were made.

127.    Goshen Health made these representations to Dr. Bonzani knowing them to be false or made them recklessly without knowledge as to their truth or falsity.

128.    Dr. Bonzani reasonably relied on the representations made by Goshen Health concerning the position and future available to him at Goshen Health.

129.    As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendant, Goshen Health System, Inc., in an amount that includes Plaintiff's compensatory damages, punitive damages, costs, and all other just and proper relief.

## COUNT VII – FRAUD IN THE INDUCEMENT VERSUS GOSHEN HEALTH AND GOSHEN HOSPITAL

130.    Dr. Bonzani incorporates the allegations of Paragraphs 1 through 129 of this Complaint as if fully restated in this paragraph.

131.    As more fully described above, Goshen Health and Goshen Hospital made certain representations to Dr. Bonzani to induce him to sign the Separation Agreement.

132.    The representations made by Goshen Health and Goshen Hospital were false at the time they were made.

133.    Goshen Health and Goshen Hospital made these representations to Dr. Bonzani knowing them to be false or made them recklessly without knowledge as to their truth or falsity.

134.    Dr. Bonzani reasonably relied on the representations made by Goshen Health and Goshen Hospital concerning the Separation Agreement.

135.    As a direct and proximate result, Dr. Bonzani has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, Robert Bonzani, M.D., by counsel, respectfully requests judgment against Defendants, Goshen Health System, Inc. and Goshen Hospital Association, Inc.

in an amount that includes Plaintiff's compensatory damages, punitive damages, costs, and all other just and proper relief.

Respectfully submitted,

BECKMAN LAWSON, LLP


*/s/ Craig R. Patterson*
Craig R. Patterson, #18104-02
Taylor A. Beaty, #32508-17
Beckman Lawson, LLP
201 W. Wayne St.
Fort Wayne, IN 46802
Telephone: 260-422-0800
Facsimile: 260-420-1013
Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff, Robert Bonzani, M.D, by counsel, respectfully requests a trial by jury as to all issues so triable.

Respectfully submitted,

BECKMAN LAWSON, LLP


*/s/Craig R. Patterson*
Craig R. Patterson, #18104-02
Taylor A. Beaty, #32508-17
Beckman Lawson, LLP
201 W. Wayne St.
Fort Wayne, IN 46802
Telephone: 260-422-0800
Facsimile: 260-420-1013
Attorneys for Plaintiff