IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBERT BONZANI MD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00586-PPS-MGG |
| | ) | |
| GOSHEN HEALTH SYSTEM, INC., | ) | |
| GOSHEN HOSPITAL ASSOCIATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

Goshen Health System, Inc. ("Goshen Health") and Goshen Hospital Association, Inc. ("Goshen Hospital" and, collectively with Goshen Health "Defendants"), through undersigned counsel, respectfully submit this Motion to Dismiss, pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. In support of its Motion, Defendants state as follows:

**I. BACKGROUND**

Plaintiff is a urologist who was formerly employed by Defendants. In October 2017, a patient died during surgery under Plaintiff's care. Plaintiff's surgical privileges were subsequently suspended pending an investigation into the patient's death. During the investigation, and while the final decision on Plaintiff's privileges was pending, Plaintiff resigned both his staff membership and clinical privileges. Plaintiff's resignation caused a triggering event wherein Defendants were required to report their investigation and Plaintiff's resignation to the National Practitioner Data Bank ("NPDB"). The parties also entered into a Separation Agreement upon Plaintiff's resignation. The Separation Agreement agreed to compensate Plaintiff in exchange for Plaintiff's unconditional and irrevocable waiver of any and all claims Plaintiff may have against

1

Defendants.  Plaintiff also expressly contracted that he did not rely on any representations made by Defendants in signing the Separation Agreement.

Plaintiff has now filed this Amended Complaint seeking a declaratory judgment rendering the Separation Agreement unenforceable as well as damages relating to various breach of contract and fraud claims, defamation and disparagement.  Plaintiff's Amended Complaint is frivolous and fails to state any claims upon which Plaintiff is entitled to relief.  Plaintiff's request for declaratory judgment goes against longstanding Indiana caselaw, Defendants are immune from any liability, Plaintiff has failed to sufficiently plead fraud as required under FRCP 9(b), and Plaintiff's remaining disparagement and defamation claims are without any merit.  Finally, Plaintiff attempts to elude his Employment Agreement, which is where this entire action arises out from, wherein Plaintiff expressly waived his right to a jury trial and agreed to arbitrate his claims.  Accordingly, Plaintiff's Amended Complaint must be dismissed under Rules 9(b) and 12(b)(6).

## II. RELEVANT FACTS

1.      On December 14, 2016, Plaintiff signed the Employment Agreement between himself and Goshen Health (Dkt. 19, p. 3 of 28, ¶ 16). The Employment Agreement was effective December 26, 2016 (Dkt. 1[1], Sealed Exh. A, p. 12). The Employment Agreement states:

> **18.      Entire Agreement**. This Agreement constitutes the entire agreement between the parties and contains all the agreements between them with respect to the subject matter hereof. It also supersedes any and all other agreement or contracts, either oral or written, between the parties with respect to the subject matter hereof.

Dkt. 1, Sealed Exh. A, p. 10, ¶ 18. The Employment Agreement further states:

> **22.      Arbitration**. Except for a dispute arising under paragraph 13, any dispute or claim between the parties arising out of the interpretation of or performance under this Agreement shall be settled by arbitration. In such event, either party shall

---

[1] Plaintiff attached the Employment Agreement and Separation Agreement to his Complaint but omitted attaching to his Amended Complaint.  However, Plaintiff has incorporated both agreements by reference and Defendants must therefore cite to the attachments in Plaintiff's Complaint.

2

make a written demand for arbitration, and each party shall then select an arbitrator. The two arbitrators shall select a third arbitrator. If they cannot agree within thirty (30) days, either party may request that selection be made by the Judge of the Elkhart Circuit Court. Unless both parties agree otherwise, arbitration will take place in Elkhart County, Indiana. Indiana law will apply as to arbitration procedures and evidence. A decision agreed to by two of the arbitrators will be binding on the parties. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. All costs of the arbitration shall be borne equally by the parties and each party shall be responsible for its attorney fees and expenses.

In the event the provision for mandatory arbitration is declared invalid or is waived in writing or any dispute arising under this Agreement is submitted to the judicial process, then, to the furthest extent permitted by law, the parties hereby irrevocably waive all right of a trial by jury in any action, proceeding, or counterclaim arising out of or in connection with this Agreement or any matter arising in connection hereunder.

Dkt. 1, Sealed Exh. A, p. 11, ¶ 22.

The Employment Agreement also allows Goshen Health to terminate it without cause, stating, in relevant part:

**11.    Termination.**

e.    Termination Without Cause. Either party may terminate this Agreement without cause by giving the other party at least ninety (90) calendar days prior written notice of intent to terminate. . . . In the event that Goshen Health terminates this Agreement without cause, Goshen Health may provide compensation equal to the entire ninety (90) day notice period in lieu of Physician continuing to provide medical services hereunder for the duration of the ninety (90) days or else permit Physician to continue his employment through the ninety (90) day period.

Dkt. 1, Sealed Exh. A, p. 7-8, ¶ 11(e).

2.    In October, 2017, a patient died during a surgery performed by Plaintiff (Dkt. 19, p. 5 of 28, ¶ 33).

3.    Plaintiff's surgical privileges were suspended effective October 31, 2017 (Dkt. 19, p. 6 of 28, ¶ 36-7).

4.    Plaintiff requested an expedited hearing (Dkt. 19, p. 7 of 28, ¶ 41).

4845-4640-3238v8

5.     Plaintiff withdrew his request for an expedited hearing. Subject Statement to NPDB, below, incorporated by reference (Dkt. 19, p. 20 of 28, ¶ 118), attached as Exhibit 1[2].

6.     On December 29, 2017, the Goshen Hospital Medical Executive Committee suspended Plaintiff's hospital privileges (Dkt. 19, p. 11 of 28, ¶ 64), and set a meeting to reach a final decision on January 9, 2018. *Id*. ¶ 65.

7.     On January 3, 2018, Plaintiff met with his own counsel (Dkt. 19, p. 14 of 28, ¶ 81).

8.     Between January 2 and January 8, 2018, Plaintiff left his home twice to see his therapist (Dkt. 19, p. 16 of 28, ¶ 90).

9.     On January 5, 2018, Plaintiff's attorney e-mailed him a copy of the Separation Agreement with Goshen Health (Dkt. 19, p. 16 of 28, ¶ 93). Dr. Bonzani signed that Separation Agreement. *Id*. (¶ 99 and Dkt. 1, Sealed Exhibit C).

10.    Plaintiff entered into the Separation Agreement, resigning both his staff membership and his clinical privileges, while the final decision on his privileges, initially suspended due to the death of a patient during surgery by Plaintiff, was pending. *Id.*

11.    Pursuant to the Separation Agreement, Plaintiff received all the compensation he was due pursuant to Paragraph 11(e) of the Employment Agreement, 90 days of compensation, as well as 90 day of reimbursement for COBRA premiums for himself and his family and forgiveness of an outstanding loan amount of $54,864.00 (Dkt. 1, Sealed Exhibit C, p. 2, ¶ 2).

12.    Plaintiff also unconditionally and irrevocably waived, released, and forever discharged and covenanted not to sue Goshen Hospital and Goshen Health for any reason,

---

[2] Plaintiff references the NPDB report in Paragraph 105 of his Amended Complaint and affirmatively states that a "copy of the NPDB Report is attached to this Amended Complaint as Exhibit E." Dkt. 19, p. 18 of 28, ¶ 105. However, Defendants have been unable to identify an Exhibit E to Plaintiff's Amended Complaint. Therefore, Defendants are attaching the NPDB report to this Motion as Exhibit 1. This Court may consider Exhibit 1 because the NPDB report was incorporated by reference in the pleadings. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

specifically including any claims arising out of his employment, his separation from employment,

his membership on and resignation from medical staff, and any investigation, quality review, or

other action taken by Defendants (Dkt. 1, Sealed Exhibit C, p. 2, ¶ 3).

13.     The Separation Agreement included both a "Confidentiality" and a "No

Disparagement" clause, each beginning with the phrase, "Except as may be required under

compulsion of law." (Dkt. 1, Sealed Exhibit C, p. 5, ¶¶ 6 and 8).

14.     The Separation Agreement also included the following paragraph:

> **9.     Representations**.      EACH PARTY SIGNING BELOW REPRESENTS
> AND WARRANTS TO THE OTHER PARTY THAT THE PARTY HAS READ
> THIS AGREEMENT IN ITS ENTIRETY, AND HAVING HAD ACCESS TO
> LEGAL COUNSEL, FULLY UNDERSTANDS ITS CONTENTS AND
> EFFECTS AND AGREES TO BE FULLY BOUND BY ITS TERMS.

Dkt. 1, Sealed Exhibit C, p. 6, ¶ 9.

15.     The Separation Agreement also contained a clause expressly stating that the

Separation Agreement is the entire agreement and that neither party relied upon representations or

statements of the other party in entering into this Separation Agreement:

> **10.     Complete Agreement**. This Agreement contains the entire understanding
> between Goshen Health and Bonzani, except as otherwise stated in this Agreement.
> This Agreement cannot be modified, amended, or terminated except by written
> instrument executed by Goshen Health and Bonzani, and no parties are relying upon
> any oral representations or statements in executing this Agreement. Should a court
> to deem any portion of this Agreement unenforceable, the remaining portion shall
> automatically be severed therefrom and shall remain in full force and effect. This
> Agreement shall be governed and construed in accordance with the laws of the State
> of Indiana.

Dkt. 1, Sealed Exhibit C, p. 6, ¶ 10.

16.     On January 23, 2018, Goshen Hospital submitted a report to the NPDB. The report

stated, in its entirety:

> The President of the Medical Staff, under the authority of the Medical Executive
> Committee, suspended Dr. Bonzani's surgical privileges based on concerns related
> to procedure modality, patient selection, and case preparation following an

unexpected and significant post-surgery outcome. During the subsequent peer review investigation, but prior to a final recommendation of the Medical Executive Committee, Dr. Bonzani resigned his clinical privileges from the Hospital. Prior to his resignation and during the investigation, Dr. Bonzani requested and received a hearing limited only to the suspension. The Medical Executive Committee upheld the suspension pending completion of the investigation.

National Practitioner Data Bank Report, DCN 5500000131106214, January 23, 2018, attached as

Exhibit 1, incorporated by reference into Plaintiff's Amended Complaint, (Dkt. 19, p. 18 of 28, ¶

105).

17.    On February 12, 2018, Plaintiff filed his own statement with the NPDB:

I am obligated to respond in order to add facts necessary to put this narrative into its proper perspective. The surgical procedure at issue occurred on Friday afternoon, and lasted into the evening, involving recurrent disease in a cancerous kidney. It was requested by the hospital tumor board and the patient's treating medical oncologist. I agree that the outcome was unexpected and significant. The following Tuesday my surgical privileges were suspended without explanation. I was informed that an investigation would ensue. I obtained a complete copy of the Medical Staff By-Laws, and found that I was entitled to an expedited Hearing within 14 days. **When the Hearing was requested, the CMO informed me that the Medical Executive Committee (MEC) would be completing their investigation by the time the Hearing could proceed, and so, based on this information, I withdrew the request.** The MEC obtained an external peer review, which was flawed as a result of incomplete medical records given to the reviewer, as well as the reviewer's limited experience. Upon my identifying these flaws, and without any precedent or implicit instruction in the Medical Staff By-Laws, the MEC decided to obtain a second external peer review. This explains why the suspension persisted beyond 30 days, triggering a reportable event to the NPDB. The Hearing occurred 43 days after the suspension was initiated. The private practice urologist, who has practiced in the Goshen community for 38 years, testified on my behalf. The Hearing committee recommended that the precautionary suspension be lifted. This recommendation was based on three factors: 1) the complexity, difficulty, and high-risk of the procedure; 2) requests from the Cancer Center tumor board to perform the case; and 3) OR logistics, which were traced directly to afternoon OR staff that were not trained in robotics, and unproductive meetings regarding providing reasonable start times for cases of high complexity and length. I did not receive a copy of the Hearing Committee report until eight days after it was released. Despite the recommendation, the MEC continued to uphold the suspension without explanation. I was not allowed to directly address the MEC. I thereupon resigned. I now become the third (of three) hospital employed urologists to resign from Goshen Hospital in less than ten years.

4845-4640-3238v8

Subject Statement, NPDB , DCN 5500000131106214, submitted 02/12/2018 (emphasis added), attached as Exhibit 1, incorporated by reference, (Dkt. 19, p. 20 of 28, ¶ 118, attached as Exhibit 1).

### III. ARGUMENT

A party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the amended complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Alarm Detection Sys.*, 930 F.3d at 821 (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

However, when a party alleges fraud, he or she "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud. *United States ex rel. Berkowitz v. Automation Aids, Inc*., 896 F.3d 834, 839 (7th Cir. 2018) (internal quotations and citation omitted). Although what constitutes "particularity" may depend on the facts of each case, Plaintiff must "use some means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. (internal quotations, alteration, and citation omitted).

## A. THE SEPARATION AGREEMENT IS ENFORCEABLE

Plaintiff's **Count I** must be dismissed because Plaintiff has failed to establish any actual controversy that would permit this Court to render the Separation Agreement unenforceable. The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (28 U.S.C. § 2201). In order to succeed on a request for declaratory judgment, Plaintiff must establish the existence of an "actual controversy." *Northland Ins. Co. v. Gray*, 240 F.Supp.2d 846, 848 (N.D. Ind. 2003). The threat of Plaintiff's injury must be real and immediate, not conjectural or hypothetical, and there must be a "substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. When no controversy exists, the case is moot. *Id*.

An "actual controversy" exists when "the facts alleged under all circumstances show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Id*. Plaintiff's request for a declaratory judgment rendering the Separation Agreement unenforceable should be denied because Plaintiff has failed to demonstrate an actual controversy exists. Plaintiff argues the Separation Agreement is unenforceable for three[3] reasons:

a. That he "lacked the capacity to contract" at the time he signed it (Dkt. 19, p. 21-22 of 28, ¶ 125).

b. That Goshen Hospital and Goshen Health "fraudulently induced him to enter into" the Separation Agreement (Dkt. 19, p. 22 of 28, ¶ 126).

---

[3] Plaintiff asserts additional grounds in his prayer for relief in Count I to render the Separation Agreement unenforceable, specifically in subsections E & F. Plaintiff's additional grounds in his prayer for relief are addressed throughout this Motion.

    c. That, subsequent to entering into the Separation Agreement, Goshen Health and Goshen Hospital breached it by submitting the NPDB report, in violation of the "Confidentiality" and "No Disparagement" provisions. *Id*. ¶ 127.

As the following subsections explain, none of the foregoing arguments asserted by Plaintiff establish even the slightest controversy. Consequently, Plaintiff's request for declaratory judgment, **Count I**, should be denied for the following reasons.

### 1. PLAINTIFF HAD CAPACITY TO CONTRACT

Plaintiff attempts to circumvent the enforceability of the Separation Agreement by arguing that Plaintiff was incapacitated when he signed the Separation Agreement. While Plaintiff makes the allegation that he "was unable to understand in a reasonable manner the nature and effect of signing the Separation Agreement," he provides no basis for the conclusory statement. There is no question that the test of the capacity to contract in Indiana is that a party "must not only have been of unsound mind, but also must have had no reasonable understanding of the contract's terms due to his instability." *Wilcox Mfg. Group, Inc. v. Marketing Services of Indiana, Inc.*, 832 N.E.2d 559, 562 (2005), and Plaintiff's Amended Complaint, (Dkt. 19, p. 17 of 28, ¶ 96), clearly recites this rule. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009). Plaintiff's Amended Complaint admits that he was represented by counsel and he met with his attorney, (Dkt. 19, p. 14 of 28, ¶¶ 80-81), that he had the wherewithal to give a gun to his medical assistant "before he hurt himself," (Dkt.19, 15 of 28, ¶ 83), that he left the home to see his therapist, (Dkt. 19, p. 16 of 28, ¶ 90-92), that his attorney delivered the Separation Agreement by email, *Id*. ¶ 93, and that he signed the Separation Agreement. *Id*. ¶ 99. The Amended Complaint does not allege that Plaintiff was, either at the time he signed the Separation Agreement or any time thereafter, judicially ascertained to be of unsound mind, placed under guardianship, or even diagnosed with

9

a psychiatric or psychological condition that would impair his ability to understand the actions he took in consultation with counsel. The threadbare recitation of the rule is insufficient to raise the claim that the Separation Agreement is unenforceable.

### 2. PLAINTIFF WAS NOT FRAUDULENTLY INDUCED TO SIGN SEPARATION AGREEMENT

Plaintiff also attempts to argue that he was fraudulently induced to enter into the Separation Agreement, again, to no avail. Plaintiff cannot rely on any alleged representations made by Defendants because (1) Plaintiff expressly contracted that he did not rely upon any representations by Defendants and (2) the parties contracted that the Separation Agreement was the entire agreement.

The Separation Agreement explicitly states the following:

> 10. Complete Agreement.    This Agreement contains the entire understanding between Goshen Health and Bonzani, except as otherwise stated in this Agreement. This Agreement cannot be modified, amended, or terminated except by written instrument executed by Goshen Health and Bonzani, **and no parties are relying upon any oral representations or statement in executing this Agreement.** Should a court to deem any portion of this Agreement unenforceable, the remaining portion shall automatically be severed therefrom and shall remain in full force and effect. This agreement shall be governed and construed in accordance with the laws of the State of Indiana.

Dkt. 1, Sealed Exhibit C, p. 6, ¶ 10. (emphasis added).

Whatever alleged misrepresentations Defendants made to Plaintiff have no bearing on the enforceability of the release because Plaintiff explicitly contracted away any right to rely on any representations of Defendants before entering into the Separation Agreement. *See Prall v. Indiana Nat. Bank*, 627 N.E.2d 1374, 1378 (Ind.Ct.App. 1994).

The general rule in Indiana is "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties . . . the parol evidence rule prohibits courts

from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Krieg v.* Hieber, 802 N.E.2d 938, 943 (Ind.Ct.App. 2004). The interpretation of a release is determined by the terms of the particular instrument, considered in light of all facts and circumstances. *Prall*, 627 N.E.2d at 1377. Release agreements are interpreted as a matter of law, absent some ambiguity. *Id*. In the absence of ambiguity, the court looks only to the instrument to ascertain the parties' intent. *Id*. The weight given to an integration clause will vary, depending on the facts and circumstances of each particular case. *Id*. Where two sophisticated parties engage in extensive preliminary negotiations, an integration clause may, in fact, reflect their mutual intention to abandon preliminary negotiations in favor of a complete and final statement of the terms of their agreement. *Id*.

Plaintiff negotiated and signed the Separation Agreement with the advice of counsel. Plaintiff, a urologist with advanced educational training, is a sophisticated party. The Separation Agreement clearly states that Plaintiff did not rely on any representations made by Defendants before signing the agreement. Additionally, Plaintiff has not argued that the integration clause, or the Separation Agreement as a whole, is ambiguous or that he entered into the Separation Agreement under economic duress. Therefore, the Separation Agreement is unambiguous and the Court must only look to the four corners of the Separation Agreement.  Consequently, it is clear that Plaintiff has contracted away his right to claim he was relying upon any representations made by Defendants.

Even if Plaintiff had not unequivocally affirmed in the Separation Agreement that he was not relying on any representations of Defendants, Plaintiff has failed to sufficiently plead that he was fraudulently induced. The general principle that fraud vitiates all contracts applies to releases. *Campbell v. Criterion Group*, 621 N.E.2d 342, 345 (Ind.Ct.App. 1993). The elements of fraud are

11

(1) a material representation of past or existing fact was made (2) which was untrue and known to be untrue by the party making it, or else recklessly made, (3) the other party did in fact rely on the representation, and (4) proximately caused the complaining party injury. *Pugh's IGA v. Super Food Services, Inc.*, 531 N.E.2d 1194, 1197 (Ind.Ct.App. 1988).

Plaintiff simply states that Defendants cannot enforce the Separation Agreement because Defendants "fraudulently induced him to enter into the Separation Agreement.[4]" (Dkt.19, p. 22 of 28, ¶ 126 and p. 23 of 28, ¶ D). Plaintiff has not alleged any untrue material representation upon which he relied or suffered injury. Accordingly, Plaintiff has failed to sufficiently plead that he was fraudulently induced to enter into the Separation Agreement. The Separation Agreement is enforceable.

### 3. Alleged Damages Are Not Grounds to Set Aside An Enforceable Agreement

Plaintiff's third reason to set aside the Separation Agreement actually alleges breach of the Agreement due to the NPDB report. This is not a basis to set it aside, but rather a completely different remedy that further proves Defendants' position that Plaintiff's request for declaratory judgment should be denied. Of course, as detailed below, there was no breach and there are no damages for breach, as will be further discussed below. Subsequent breach is not a basis to *nunc pro tunc* set aside a contract. Regardless, as the following Section B clearly articulates, Defendants could not have possibly breached the "Confidentiality" or "No Disparagement" provisions of the Separation Agreement.

### B. Goshen Hospital Could Not Breach Separation Agreement

Plaintiff next argues that, even if the Separation Agreement is enforceable, Defendants breached the Separation Agreement by violating the confidentiality and non-disparagement

---

[4] To the extent Plaintiff argues that Defendants fraudulently induced Plaintiff to enter into the separation Agreement because of the NPDB report, please see Section D.2, pp. 21-2.

4845-4640-3238v8

provisions. The essential elements of a breach of contract are the existence of a contract, a breach thereof, and damages. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993). Defendants did not violate the Separation Agreement for a variety of reasons. First, both the "Confidentiality" provision and the "No Disparagement" provision are limited by the statement, "(e)xcept as may be required under compulsion of law." (Dkt. 1, Sealed Exhibit C, p. 5, ¶¶ 6 and 8). Second, Plaintiff's own response to the NPDB report verifies the report and establishes that Defendants did not disparage him. Third, Defendants are immune from liability under both the Health Care Quality Improvement Act and Indiana Peer Review Statute. Finally, in the event of breach, which Defendants steadfastly deny, Plaintiff has not suffered any damages. Accordingly, **Counts II, IV, and V** must be dismissed for failure to state a claim upon which relief may be granted.

### 1. DEFENDANTS WERE LEGALLY REQUIRED TO SUBMIT THE NPDB REPORT

Both the "Confidentiality" provision and "No Disparagement" provision are limited by the statement, "[e]xcept as may be required under compulsion of law." (Dkt. 1, Sealed Exhibit C, p. 5, ¶¶ 6 and 8). When Plaintiff resigned, he caused a triggering event that imposed a legal obligation on Defendants to report his resignation to the Board of Medical Examiners. 42 U.S.C. § 11133(a)(1)(B)(i), states that "[e]ach health care entity which . . . accepts the surrender of clinical privileges of a physician . . . while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct . . . shall report to the Board of Medical Examiners." Plaintiff admitted that he signed the Separation Agreement while the investigation was pending (Dkt. 19, p. 17 of 28, ¶ 99). Plaintiff's resignation triggered Defendants' legal obligation to submit a report to the Board of Medical Examiners. Plaintiff cannot now hold Defendants liable for complying with Federal law.

4845-4640-3238v8

2. Plaintiff Verified Defendants' NPDB Report

Plaintiff claims that the NPDB report disparaged and defamed Plaintiff. A defamatory communication is said to either be defamation *per se* or defamation *per quod*. *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). Defamation *per se*, as applied to Plaintiff, means the communication must impute misconduct in a person's trade, profession, office, or occupation.[5] *Id*. All other defamatory communications are defamatory *per quod*. *Id*. To succeed on a defamation claim, whether *per se* or *per quod*, Plaintiff must establish (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Id*. at 597. However, truth is a complete defense to a defamation claim. *Benson v. WANE-TV 15*, 106 N.E.3d 1055, 1056 (Ind. Ct. App. 2018). Further, a qualified privilege exists when the communication is made in good faith by a party who has a legal duty to make the communication and makes the communication to another party with a corresponding interest or duty. *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992).

Not only was Defendants' communication truthful, but it was communicated to the NPDB who had a corresponding interest. Therefore, Plaintiff's defamation claim must fail.

Further, Plaintiff's own admission in his response to the NPDB report, Plaintiff has failed to establish that Defendants disparaged or defamed Plaintiff. Goshen submitted the following to the NPDB:

> The President of the Medical Staff, under the authority of the Medical Executive Committee, suspended Dr. Bonzani's surgical privileges based on concerns related to procedure modality, patient selection, and case preparation following an unexpected and significant post-surgery outcome. During the subsequent peer review investigation, but prior to a final recommendation of the Medical Executive Committee, Dr. Bonzani resigned his clinical privileges from the Hospital. Prior to his resignation and during the investigation, Dr. Bonzani requested and received a hearing limited only to the suspension. The Medical Executive Committee upheld the suspension pending completion of the investigation.

---

[5] The other three kinds of defamation *per se*, (1) criminal conduct, (2) a loathsome disease, or (3) sexual misconduct, are inapplicable to the case at hand.

Plaintiff's response to Defendants' NPDB report shows that Defendants did not disparage Plaintiff. In fact, Plaintiff's own <u>Amended Complaint</u> verifies almost every sentence in the NPDB report:

> <u>NPDB Report</u>: The President of the Medical Staff, under the authority of the Medical Executive Committee, suspended Dr. Bonzani's surgical privileges based on concerns related to procedure modality, patient selection, and case preparation following an unexpected and significant post-surgery outcome.

> <u>Amended Complaint</u>:

> > 33. Goshen Hospital and Goshen Health continued to dismiss Dr. Bonzani's concerns regarding procedures and staffing until, in the fall of 2017, a patient died at Goshen Hospital during a complicated surgery being performed by Dr. Bonzani.

> > 35. Following the surgery, in October 2017, Dr. Murphy recommended that Dr. Bonzani's surgical privileges at Goshen Hospital be suspended due to Dr. Bonzani's failure to handle the complex robotic surgery, despite the fact she and Dr. Gerig failed as well.

> > 36. After Dr. George Kim, President of the Medical Staff at Goshen Hospital, agreed with Dr. Murphy's recommendation, Dr. Bonzani's suspension was carried out by Goshen Hospital's Chief Medical Officer at the time, Dr. Larry Allen – effective October 31, 2017.

> <u>NPDB Report</u>: During the subsequent peer review investigation, but prior to a final recommendation of the Medical Executive Committee, Dr. Bonzani resigned his clinical privileges from the Hospital.

> <u>Amended Complaint</u>:

> > 43. Dr. Bonzani participated in all levels of the Peer Review process and offered evidence to show that he has been a competent urologist serving his patients well for many years.

> > 99. Dr. Bonzani signed the Separation Agreement on January 8, the day before he had been led to believe the Medical Executive Committee would find against him resulting in his involuntary termination from Goshen Health without severance pay.

> <u>NPDB Report</u>: Prior to his resignation and during the investigation, Dr. Bonzani requested and received a hearing limited only to the suspension.

> <u>Amended Complaint</u>:

> > 59. On December 13, 2017, the Hearing Committee conducted Dr. Bonzani's hearing. The Hearing Committee consisted of Dr. Daniel Bruetman, Dr. Max

Mertz, Dr. James Lindemulder, and Dr. Benjamin Nelson. At the beginning of the hearing, Dr. Bonzani was advised by the Hearing Committee that despite what the Notice of Hearing stated, the hearing would be limited to the single surgery that triggered the suspension of his surgical privileges. Given what the notice had stated, Dr. Bonzani came to the hearing prepared to address the single surgical event but also all of the cases reviewed in the Case Report. The Hearing Committee denied Dr. Bonzani the opportunity to address the other nine cases.

NPDB Report: The Medical Executive Committee upheld the suspension pending completion of the investigation.

Amended Complaint:

64. Ignoring the Hearing Committee's decision, the Medical Executive Committee decided at the December 27, 2017 meeting to increase Dr. Bonzani's reprimand from a surgical suspension to a formal hospital suspension. Upon information and belief, the Medical Executive Committee based its decision on the second Peer Review report.

65. The Medical Executive Committee then scheduled a meeting on January 9, 2018 at which time it would make a final decision regarding Dr. Bonzani's suspension.

While Plaintiff alleges he was disparaged by the NPDB report, his own Amended Complaint tracks that report in every relevant part. Plaintiff's claim is refuted by his own Amended Complaint. Plaintiff cannot argue that Defendants had knowledge of the falsity of their report, when the report so closely tracks his own Amended Complaint. He can only allege that the truth might be damaging to him.

3. DEFENDANTS ARE IMMUNE UNDER THE HEALTHCARE QUALITY IMPROVEMENT ACT

Further, the alleged disparagement is based upon the report to the NPDB, an action taken as part of what Plaintiff admits was peer review. Defendants are entitled to immunity for filing the NPDB report (42 U.S.C. § 11137(c)). Federal law provides immunity to any participant of a formal peer review proceeding via the Health Care Quality Improvement Act (HCQIA).

Under the Healthcare Quality Improvement Act ("HCQIA"), a professional review body, which Defendants qualify as, "shall not be liable in damages under any law of the United States

16

or of any State (or political subdivision thereof) with respect to the action." (42 U.S.C. § 11111(a)(1)). A professional review action is "an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action." (42 U.S.C. § 11151(9)). HCQIA provides immunity from suit for providing information to a professional review body "unless such information is false and the person providing it knew that such information was false." (42 U.S.C. § 11111(a)(2)). Lastly, a "professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence." (42 U.S.C. § 11112(a)).

Plaintiff admits in his Amended Complaint that he participated in a peer review process after his privileges were suspended (Dkt. 19, p. 7 of 28, ¶ 43). When Plaintiff resigned during the peer review process, Defendants were required to submit the NPDB report. As described in the previous section, Plaintiff's own Amended Complaint proves the truthfulness of Defendants' NPDB report. Because the NPDB report was the result of the formal peer review process, HCQIA's immunity was triggered and applies, thereby barring all of Plaintiff's allegations in this matter.

4. Defendants are Immune Under The Indiana Peer Review Statute

As with HCQIA's protections, Indiana's provisions, too, protect Defendants. The only alleged defamatory statement by Defendants occurred because Plaintiff's resignation in the middle of a formal peer review process required Defendants to submit a NPDB report. Indiana law provides complete immunity from Plaintiff's claims.

Indiana's Peer Review Privilege serves the purpose of ensuring the candid and effective review of medical care. *Ray v. St. John's Health Care Corporation*, 582 N.E.2d 464 (Ind. App. Ct. 1991). The privilege precludes the admission into evidence of any privileged document unless consented to in writing by the peer review committee (Ind. Code §34-30-15-9). The privilege is to be applied broadly by courts in order to "protect all communications relating to the review of patient care" from disclosure during "any judicial proceeding." (I.C. §34-30-15-9); *See Mulder v. Vankersen*, 637 N.E.2d 1335, 1338.[6]  This statutory privilege may only be waived in writing by the reviewing committee. *Id* at 1339; I.C. §34-30-15-9. Critically, this privilege remains intact even if information is otherwise disclosed outside of the peer review proceedings: "a breach of confidentiality does not cause the peer review *privilege* to be waived." *Mulder*, 637 N.E.2d at 1340. It remains intact even in a defamation case, where the alleged defamatory statement took place in the course of peer review. *Id*.

Communications protected by the Peer Review privilege remain privileged even if later memorialized in a written memo where that memo is disclosed to individuals outside of the peer review committee. In *Mulder*, a memorandum that was not prepared for the peer review committee, but that memorialized communications during the course of peer review, was subject to the

---

[6] The version of the statute cited in *Ray* and *Mulder* has been repealed, but the operative language is the same. Previous Ind. Code §34-4-12.6-2(h)(2) (1994) attached as Exhibit 3-1, and current I.C. §34-30-15-9 (2014) attached as Exhibit 3-2. *See Fridono v. Chuman* citing both *Ray* and *Mulder* as controlling law on the waiver of peer review privilege after changes to the statute. 747 N.E.2d 610, 620 (Ind. App. Ct. 2001).

privilege. (637 N.E.2d at 1339). The Court found the memorialized comments were as protected in the memo as when they had been made before the Peer Review Committee. *Id*. The Court drew by analogy upon the attorney-client privilege: as attorney notes memorializing a privileged communication with a client remain privileged, so too do memorializations of otherwise privileged peer review communications. *Id*. Finally, rebutting the Plaintiff's attempt to argue the privilege had been waived by previous disclosure of the communication, the Court reiterated that the peer review privilege, unlike other privileges, is only subject to waiver as provided by the statute: written waiver by the committee. *Id*. Because the Committee had never provided a written waiver, the privilege remained intact. *Id*.

### 5. PLAINTIFF HAS NOT SUFFERED DAMAGES

Finally, Plaintiff suffered no damages for the alleged breach. The Employment Agreement allowed for termination without cause and required payment of 90 days in compensation (Dkt. 1, Sealed Exhibit A, p.7-8, ¶ 11(e)). As part of the Separation Agreement, Plaintiff received everything he was entitled to for termination without cause, and more. He received 90 days of income, 90 days of COBRA coverage, and almost $55,000.00 in loan forgiveness (Dkt. 1, Sealed Exhibit C, p. 2, ¶ 2). He received even more than he was entitled to, had Defendants terminated him without cause. He cannot show damages, and therefore he lacks standing to bring the claim.

### C. DEFENDANTS FOLLOWED THEIR BYLAWS

Plaintiff argues that Defendants breach their Medical Staff bylaws by (1) failing to provide Plaintiff with an expedited hearing that he requested, (2) ordering a second Peer Review report, and (3) broadening the reason for Plaintiff's suspension. First, Plaintiff does not have a legitimate cause of action for his breach of bylaws claim against Defendants because he withdrew his request for an expedited hearing. (Subject Statement, NPDB, DCN 5500000131106214, submitted

02/12/2018). Plaintiff's own report to the NPDB admits that he withdrew his expedited hearing request. Second, Plaintiff's allegation that Defendants' breached their medical staff bylaws became moot once he resigned mid-investigation and prevented Defendants from utilizing the peer review process. Accordingly, Plaintiff's **Count III** must be dismissed for failure to state a claim upon which relief may be granted.

### D. PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD FRAUD

Plaintiff's final count, **Counts VI**, must also be dismissed. Plaintiff's argument that Defendants fraudulently induced him to sign the Separation Agreement must be dismissed because Plaintiff has again failed to state a claim upon which relief may be granted (Dkt. 19, p. 26 of 28, ¶¶ 145 to 150). To state a claim for fraudulent inducement, Plaintiff must allege "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of its falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment." *Jones v. Oakland City Univ.*, 122 N.E.3d 911, 918 (Ind.Ct.App. 2019), citing *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind.Ct.App. 2004). Further, the claim "may not be predicated upon representation of future conduct," *id.* and may not be based on "broken promises, unfulfilled predictions, or statements of intent which are not executed." *Id*. Citing *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind.Ct.App. 1995), *trans. denied.*

When a party alleges fraud, he "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (internal quotations and citation omitted). Although what constitutes "particularity" may depend on the facts of each case, plaintiffs must "use some means of injecting

precision and some measure of substantiation into their allegations of fraud." *Id.* (internal quotations, alteration, and citation omitted).

Plaintiff alleges Defendants fraudulently induced him into entering into the Settlement Agreement, arguing Defendants were required to submit a NPDB report on or before December 31, 2017. Plaintiff erroneously supports this assertion, claiming that because the Separation Agreement referenced suspension of privileges on October 31, 2017, Plaintiff could rely on this reference that no NPDB report would be filed (Dkt. 19, p. 18-19 of 28, ¶¶ 108-111). This misstates both the basis for the NPDB report and the law. Again, Defendants were never required to submit the NPDB report until Plaintiff resigned in the middle of the peer review investigation. Once Plaintiff resigned, Defendants became legally required to submit the NPDB report.

Plaintiff's theory does not even suggest a material misrepresentation of past or existing facts by the Defendants. Rather, it suggests that Plaintiff, himself, miscalculated Defendants' duty to submit an NPDB report, believing it was due on December 31st or sooner, and that he relied upon that miscalculation for his assumption that no report would follow. Ironically, the Separation Agreement he signed based upon his own miscalculation, which he never transmitted to Defendants, was the actual event that triggered the eventual NPDB report.

42 U.S.C. § 11133(a)(1)(B)(i), clearly articulates the triggering event. It states that "[e]ach health care entity which . . . accepts the surrender of clinical privileges of a physician . . . while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct . . . shall report to the Board of Medical Examiners." Defendants had no duty to submit the NPDB report until they, as the health care entity, accepted Plaintiff's signed Separation Agreement, which surrendered Plaintiff's clinical privileges, while Plaintiff was still

under investigation. Stated otherwise, Defendant's duty to submit the NPDB report materialized on January 8, 2018, when Plaintiff signed the Separation Agreement.

Plaintiff is apparently attempting to equate suspension with surrender. Defendants' legal requirement to report Plaintiff to the NPDB board was not triggered when it temporarily suspended Plaintiff's privileges to conduct an investigation. The suspension and investigation were not final actions that would require any reporting. Rather, they are a process to determine whether Plaintiff's actions relating to the patient death warranted Defendants' legal requirement to submit a NPDB report. Plaintiff's argument that Defendants were required to submit the NPDB report upon temporarily suspending Plaintiff's privileges to conduct an investigation is premature. Common sense supports this reasoning. If Plaintiff let the investigation play out and come to a final resolution, and if Defendants had found that Plaintiff was not a threat to patient care, then Defendants would have reinstated Plaintiff's privileges. This would not have triggered a duty to submit a NPDB report, and for good reason because it would be harmful to Plaintiff if Defendants submitted a report before it completed its investigation. However, because Plaintiff resigned while the investigation was pending, Defendants were required to submit the report.

Defendants could not fraudulently induce Plaintiff to perform an act by following the law. Naturally, Defendants did not make any material misrepresentation to Plaintiff upon which he reasonably relied and suffered damages. Plaintiff's **Count VI** must be dismissed.

### E. PLAINTIFF IS NOT ENTITLED TO A JURY TRIAL

Lastly, Plaintiff's Jury Trial Demand should be denied. The arbitration provision in Plaintiff's Employment Agreement specifically states that "[i]n the event . . . any dispute arising under this Agreement is submitted to the judicial process, then . . . the parties hereby irrevocably waive all right of a trial by jury in any action, proceeding, or counterclaim arising out of or in

22

connection with this Agreement or any matter arising in connection hereunder." (Dkt. 1, Sealed Exh. A, p. 10, ¶ 22). All of Plaintiff's claims arise from his employment with Defendants and Plaintiff's performance under the Employment Agreement. Any claims that survive this Motion or are determined non-arbitrable must be heard by this Court and not submitted to a jury.

## F. CONCLUSION

Plaintiff has failed to state multiple claims upon which he is entitled to relief. Plaintiff had capacity when he signed the Separation Agreement with the assistance of counsel, Plaintiff contracted away his right to rely upon any representations by Defendants and was therefore not fraudulently induced into entering the Separation Agreement, and Defendants could not have breached the "Confidentiality" and "No Disparagement" provisions of the Separation Agreement because they were legally required to report the resignation to the NPDB. The Separation Agreement is therefore enforceable.

Because Plaintiff is bound by the Separation Agreement, his other causes of action must be dismissed. Defendants could not have breached the Separation Agreement because Defendants were required by law to submit the NPDB report. Defendants also followed their own bylaws and, even if they hadn't, Plaintiff's resignation rendered his claim futile. Defendants could not have disparaged or defamed Plaintiff, or breached their confidentiality duty to Plaintiff, because they were legally required to submit the NPDB report. Finally, Plaintiff has failed to sufficiently plead fraud in the inducement to enter into Separation Agreement. Accordingly, Plaintiff's **Counts I, II, III, IV, V, and VI** must all be dismissed, and Plaintiff's Jury Trial Demand must be denied.

Respectfully submitted,

HALL, RENDER, KILLIAN HEATH & LYMAN, P.C.

 */s/ David B. Honig*
David B. Honig, #22247-49
Andrew B. Howk, #30684-49
Jake B. Kolisek, #33797-49
500 N. Meridian Street, Suite 400
Indianapolis, IN 46204
Telephone: (317) 633-4884
Facsimile: (317) 633-4878
DHonig@hallrender.com
AHowk@hallrender.com
JKolisek@hallrender.com
*Attorneys for Defendants, Goshen Health System, Inc.*
*and Goshen Hospital Association, Inc.*

4845-4640-3238v8