UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT BONZANI, M.D., <br><br> Plaintiff, <br><br> v. <br><br> GOSHEN HEALTH SYSTEMS, INC. and <br> GOSHEN HOSPITAL ASSOCIATION, INC., <br><br> Defendants. | CAUSE NO. 3:19-CV-00586 DRL-MGG |

OPINION & ORDER

Dr. Robert Bonzani practiced urology at Goshen Hospital under an employment agreement with its parent company, Goshen Health Systems, Inc. The agreement contained an arbitration provision. After a patient died during a procedure performed by Dr. Bonzani, Goshen Health terminated his employment through a separation agreement. This agreement lacked an arbitration provision. The parties now debate whether Dr. Bonzani's claims should be arbitrated or dismissed.

The slate of briefing suffers from some inconsistency. Goshen Health and Goshen Hospital seek arbitration based on the employment agreement but concede that the parties terminated that contract through the separation agreement. They offer no explanation for why arbitration should be compelled based on an agreement that no longer exists. No better, Dr. Bonzani opposes arbitration but in the same breath argues that the separation agreement should be rescinded, thereby presumably reactivating the very arbitration requirement he wants to avoid. No authority has been offered to deprive him of the luxury of alternative arguments at this stage, though.

The court, not satisfied on this record that a valid arbitration agreement exists or that claims fall within its scope, denies Goshen Health and Goshen Hospital's motion to compel arbitration and to stay litigation. Their motion to dismiss Dr. Bonzani's amended complaint is granted only in part.

BACKGROUND

The following facts emerge from the amended complaint, which must be assumed as true for purposes of the motion to dismiss. In 2016, Dr. Bonzani began discussing with Goshen Health an opportunity to practice urology at Goshen Hospital. On December 14, 2016, Dr. Bonzani and Goshen Health signed an employment agreement. Goshen Hospital was not a signatory, though the agreement identified it as a subsidiary of Goshen Health. Having privileges at Goshen Hospital was a condition of Dr. Bonzani's employment with Goshen Health.

Among other things, the employment agreement incorporated peer review procedures from the hospital's medical staff bylaws, defined certain termination and separation conditions, and included an arbitration provision. The arbitration provision stated in part that "any dispute or claim between the parties arising out of the interpretation of or performance under this Agreement shall be settled by arbitration." ECF 4 ¶ 22.

Dr. Bonzani began working for Goshen Health on March 15, 2017. In October 2017, a patient died from complications during surgery. Goshen Hospital's Chief Medical Officer suspended Dr. Bonzani's surgical privileges. Goshen Hospital's Medical Executive Committee (MEC) formed an investigation committee to commence a peer review process. The hospital's bylaws, incorporated into Dr. Bonzani's employment agreement, established the MEC's authority to investigate. *Id.* ¶ 4(g). Dr. Bonzani complied with the peer review process by submitting recommendation letters, providing operative logs from other hospitals where he worked, and tendering proof of board certification.

Fourteen days into his suspension, Dr. Bonzani requested an expedited hearing, a right provided in the bylaws. On his own, he initiated a review of his work and found that, in his opinion, only nine of 96 cases were worth examining. An outside peer reviewer submitted a report to the investigative committee. Dr. Bonzani challenged the report on several grounds. The investigative committee agreed with Dr. Bonzani and ordered a new peer review report.

2

While that second peer review report was underway, Dr. Bonzani appeared before a hearing committee to discuss the October 2017 incident. The hearing (rescheduled once) occurred 43 days after Goshen Hospital initiated the precautionary suspension. Dr. Bonzani was exonerated. The hearing committee recommended to the MEC that the precautionary surgical suspension be lifted.

The MEC thereafter received the second peer review report, now critical of Dr. Bonzani, and decided to ignore the hearing committee's recommendation. The MEC scheduled a final hearing for January 9, 2018. Seven days beforehand, officers at Goshen Health confronted Dr. Bonzani with the second peer review report and told him it was time to transition out of Goshen Hospital. Dr. Bonzani had two options: voluntarily leave with severance pay or involuntarily leave without severance pay.

During the next several days as Dr. Bonzani weighed his decision, he became despondent and withdrew emotionally and physically. He possessed a firearm with the intent of ending his life, but he asked his medical assistant to take the gun away from him. Except for having someone drive him to his therapist, he did not go outside or perform regular activities.

On January 8, 2018, one day before the final hearing, Dr. Bonzani opened an email from his attorney with a separation agreement from Goshen Health. He says he didn't read the agreement. He printed the signature page, signed it, and sent it back to his lawyer. He signed it because he believed that the MEC would find against him resulting in his involuntary termination without severance pay. He says he had no understanding of the separation agreement's terms when he signed it because of his mental state. The separation agreement defined Goshen Health to include its subsidiaries, and contained provisions addressing confidentiality, non-disparagement, severance pay and benefits, waiver and release, and integration. ECF 5. There was no arbitration provision.

After the agreement was signed, Goshen Health and Goshen Hospital filed a report with the National Practitioner Data Bank (NPDB) related to Dr. Bonzani's employment and termination. The separation agreement made no mention of the NPDB report, so Dr. Bonzani believed no report would

3

be submitted, though that allegation seems troublesome if he never read the agreement. Dr. Bonzani says the NPDB report contained false and misleading statements. To mitigate the damage, he submitted his own statement objecting to it.

Dr. Bonzani alleges five claims against both Goshen Health and Goshen Hospital: (1) declaratory judgment regarding the enforceability of the separation agreement, (2) breach of contract (separation agreement), specifically the confidentiality and non-disparagement clauses, (3) disparagement, (4) defamation, and (5) fraud in the inducement of the separation agreement. And he alleges one additional claim against only Goshen Hospital for breaching its medical bylaws. Goshen Health and Goshen Hospital seek to compel arbitration or alternatively dismiss the claims.

## STANDARD

The Federal Arbitration Act (FAA) requires courts to treat written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 629 (2009) (quoting 9 U.S.C. § 2). The question of arbitrability—whether the parties must submit a particular dispute to arbitration—is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Under the FAA, three things are needed to compel arbitration: (1) a written arbitration agreement, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate that dispute. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[I]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). A court may not refuse to compel arbitration on claims merely because some of the claims are not arbitrable. *Id.*

"The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). This circuit

4

has analogized the standard to that required of a party opposing summary judgment under Federal Rule of Civil Procedure 56(e). *Id.* The opposing party must demonstrate that a genuine issue of material fact warranting a trial exists. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.; see also Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (same). In short, the party opposing arbitration must identify a triable issue concerning the agreement's existence or scope to preserve a trial. *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987).

Shifting to the other motion here, with a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face and more than just speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

In cases of alleged fraud, pleading requirements are more stringent. The alleging "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must contain the "who, what, when, where, and how" of the fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Whether the heightened standard of "particularity" is met depends on the specifics of the case. *Id.* If not met, the motion to dismiss will be granted.

DISCUSSION

    A.    *Goshen Health and Goshen Hospital's Motion to Compel Arbitration and Stay Litigation Must Be Denied Without an Operative Arbitration Agreement or Claims Within its Scope.*

The Federal Arbitration Act was enacted to "reverse the longstanding judicial hostility to arbitration agreements," which had carried over into American courts from English common law. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA created a strong policy favoring arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), but it remains a matter of contract, so courts must view arbitration agreements on equal terms as other contracts, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply state law principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The court must first decide whether a valid contract to arbitrate exists before it decides whether to stay an action and order arbitration based on the contract's scope. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). "Where there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability." *Id.* (citations omitted).

The FAA allows arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility*, 563 U.S. at 339 (quotations omitted). "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296; *see, e.g.*, *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 514 (7th Cir. 2003) (remanding a case to assess whether there was a meeting of the minds in light of a motion to compel arbitration);

6

*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (holding that "as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator"); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130-31 (7th Cir. 1997) (argument that a promise lacked consideration was a judicial issue).

Here, just like collecting $200 before passing Go, Goshen Health and Goshen Hospital argue that Dr. Bonzani's claims are within the scope of the arbitration provision before showing that a valid arbitration agreement exists. *Zurich*, 417 F.3d at 687 (requiring a valid arbitration agreement before compelling arbitration). Dr. Bonzani cannot rely on his pleadings to oppose arbitration, *see Tinder*, 305 F.3d at 735, but Goshen Health and Goshen Hospital readily admit that "the [s]eparation [a]greement terminated the [e]mployment [a]greement" (ECF 26 at 4-5; *see also* ECF 36 at 1). The court cannot say on this record then that an enforceable arbitration provision exists or that any claims here fall within the scope of a once operable but now defunct arbitration provision.

This circuit has addressed similar circumstances, but first some brief groundwork to lay. In *Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 662 (7th Cir. 2002), the court held that there are two scenarios where parties might preserve an obligation to arbitrate under two separate agreements: (1) if the arbitration clause in the prior agreement is broad enough to encompass disputes under the second agreement, or (2) if the second agreement incorporates the prior agreement by reference.

Building on *Rosenblum*, and perhaps more to the point here, this circuit thereafter held that an employment agreement containing an arbitration provision lost its force and effect once it was terminated. *Shriner v. Signal Fin. Co.*, 92 F. Appx. 322, 323 (7th Cir. 2003) (applying Indiana law). A company's president had signed an employment agreement with a clause that required arbitration of "any matter arising out of this Agreement." *Id.* at 326. The parties later entered into a severance agreement terminating the employment agreement. He continued to serve his company at-will until

7

he was terminated. He sued and invoked the employment agreement's arbitration provision based on an acquisition agreement that he claimed reinstated the employment agreement. *Id.* at 323-24.

This circuit held that "the district court was correct in determining that this issue of contract interpretation is to be decided by the court," not an arbitrator. *Id.* at 325. The court found the arbitration provision in the employment agreement was not broad enough to capture the dispute. *See id.* at 326-27. Instead, "[o]nce the Employment Agreement was terminated . . . the arbitration clause ceased to have any force and [did] not continue to govern any later negotiated employment relationship." *Id.* at 327; *see also Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind. Ct. App. 2001). This circuit likewise held that the arbitration provision had not been incorporated into any later agreement. *Shriner,* 92 F. Appx. at 327; *see also I.C.C. Protective Coatings v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind. Ct. App. 1998) (Indiana's incorporation doctrine).

Neither scenario from *Rosenblum* thus appeared in *Shriner*, and neither scenario presents here either. Dr. Bonzani's employment agreement with the arbitration provision was terminated. Goshen Health and Goshen Hospital admit it. By their admission, the arbitration provision became no longer effective upon the separation agreement's execution. They have not explained how a defunct arbitration provision can still operate to compel arbitration. As easily as one can form an agreement of arbitration under state law, one can terminate it.

The separation agreement likewise incorporated no arbitration requirement from the employment agreement. Quite to the contrary, the separation agreement released all claims related to Dr. Bonzani's employment (ECF 5 ¶ 3), *see Prall v. Indiana Nat'l Bank,* 627 N.E.2d 1374, 1377 (Ind. Ct. App. 1994) (release has "the purpose of foreclosing further claims"), and reflected the "entire understanding between Goshen Health [defined to include Goshen Hospital] and [Dr.] Bonzani" (ECF 5 ¶ 10), such that the intent was for the separation agreement to govern their relationship. The expression of their intent leaves nothing to force arbitration here. *See Norwood Promotional Prods. v.*

8

*Roller,* 867 N.E.2d 619, 625 (Ind. Ct. App. 2007) (agreeing that "if [the defendant] wanted to expressly incorporate the Employment Agreement into [another agreement] or vice versa, it knew how to do so and deliberately did not do so").

Even with an operable arbitration agreement, Goshen Health and Goshen Hospital would be pressed to show all of Dr. Bonzani's claims fall within its scope. Notably, the arbitration provision has its limitations, even when read broadly and consistent with the FAA's guidance. Per the contract: "Except for a dispute arising under paragraph 13, any dispute or claim between the parties arising out of the interpretation of or performance under this Agreement shall be settled by arbitration." ECF 4 ¶ 22. Arbitration can only be invoked "under this [Employment] Agreement," and for claims that arise from its interpretation or performance. *Id.* For instance, counts one, two, and six concerning the separation agreement have no bearing on the employment agreement or its interpretation or performance. Whether other claims might, the court needn't decide today because the employment agreement on this record remains terminated.

A wrinkle comes in the form of Dr. Bonzani's alternative declaratory judgment claim. On the one hand, Dr. Bonzani argues that Goshen Hospital and Goshen Health breached the separation agreement's confidentiality and non-disparagement clauses; on the other hand, he says the separation agreement is unenforceable and that Goshen Health and Goshen Hospital are liable for common law disparagement and defamation. He thus embraces the separation agreement and rejects its provisions in the alternative. This wrinkle makes the question of enforceability of Dr. Bonzani's separation agreement an essential one, as it bears on the arbitrability of his claims. If the separation agreement is enforceable, no claims are arbitrable, as the employment agreement has been terminated (though the release in the separation agreement may preclude certain claims). If the separation agreement is unenforceable, then the arbitration provision may kick in and require the court to compel arbitration of at least certain claims.

In short, the parties have argued themselves into a situation that even Michael Scott of *The Office* couldn't envision: rather than a "win win win" resolution, the parties may lose by winning. In part, Dr. Bonzani wants the separation agreement declared unenforceable but opposes arbitration; yet if he wins the former, he may lose the latter. Likewise, Goshen Health and Goshen Hospital argue the separation agreement is enforceable and want arbitration; but if they prevail on the first point, they lose on the second.

On this record, there remains a preliminary factual dispute as to the employment agreement's continued existence and accordingly its scope, bearing on the arbitrability of Dr. Bonzani's claims. *See Sphere Drake*, 256 F.3d at 591 ("No contract, no power [by the arbitrator]."). The parties haven't briefed whether Dr. Bonzani, faced with a motion to compel arbitration analogized to Rule 56, must elect a remedy under Indiana substantive law by either affirming or disaffirming the contract. *See Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) (distinguishing procedural and substantive difference in election of remedies doctrine); *cf.* Fed. R. Civ. P. 8(e)(2) (abolishing election of remedies at pleading stage). Because contract formation and enforceability remain at issue, *see Granite Rock*, 561 U.S. at 297, the appropriate course is for the parties to conduct discovery on the enforceability of the separation agreement and whether an arbitration provision is operable, *see Baugher v. Dekko Heating Techs.,* 202 F.Supp.2d 847, 851 (N.D. Ind. 2002) (Sharp, J.). Today, the court is not satisfied a valid arbitration agreement exists or that claims fall within the scope of an admittedly defunct arbitration provision. The court thus denies the motion to compel.[1]

---

[1] Under the same reasoning, whether Dr. Bonzani is entitled to a jury trial seems dependent on whether the employment agreement remains in effect—that is, whether the separation agreement is unenforceable. On this record, the employment agreement was termed, as was the jury waiver. In addition, the court doesn't reach the issue of whether Goshen Hospital, a non-signatory to the employment agreement, nonetheless may compel arbitration of claims based on the agreement's language or as a third-party beneficiary. The motion as presented must be denied regardless.

10

B.  *Goshen Health and Goshen Hospital's Motion to Dismiss is Granted Only in Part.*

The court turns next to Goshen Health and Goshen Hospital's motion to dismiss each count. The court applies Indiana substantive law, *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938), including to contract claims because the separation agreement remains so governed (ECF 5 ¶ 10).

In count one, Dr. Bonzani seeks a declaratory judgment on the separation agreement's enforceability. He advances three arguments for declaring the separation agreement unenforceable: (1) his unsound mind and lack of capacity, (2) fraudulent inducement, and (3) first material breach by Goshen Health and Goshen Hospital. Goshen Health and Goshen Hospital contend that count one presents neither a case nor controversy under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201.

By statute, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). This discretion comes from the plain text of the Declaratory Judgment Act. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added); *see Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010); *Envision Healthcare*, 604 F.3d at 986.

The phrase "case of actual controversy" within the Declaratory Judgment Act refers to those types of "Cases" or "Controversies" that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Disputes must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and they must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be

11

upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life*, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Goshen Health and Goshen Hospital argue that none of Dr. Bonzani's three grounds for declaratory judgment present an actual controversy. Turning to the first, Goshen Health and Goshen Hospital contend that Dr. Bonzani provides no basis for his conclusory statement that he was unable to understand in a reasonable manner the nature and effect of signing the separation agreement. Under *Wilcox Mfg. Group, Inc. v. Mktg. Servs. of Indiana, Inc.,* 832 N.E.2d 559, 562 (Ind. 2005), the test for whether a person lacked mental capacity to contract is two-fold: the party (1) must have been of unsound mind, and (2) must have had no reasonable understanding of the contract's terms because of his impairment. Dr. Bonzani has sufficiently pleaded both elements, and not just in conclusory fashion, so the court must accept his well-pleaded allegations as true at this stage.

According to Dr. Bonzani's amended complaint, he was given less than one week to make his decision to leave involuntarily with no severance pay or voluntarily leave with pay. In that timespan, he "withdrew emotionally and physically," was taking prescribed Xanax, carried around a loaded gun in his car with the intent of ending his life, experienced memory loss, attempted to see his therapist, refused to go outside or perform regular activities, interacted minimally with his family, and spent his time, in his words, curled up in a ball on the couch crying or sleeping. He also claims he was diagnosed with major depressive disorder, insomnia, posttraumatic stress disorder, and generalized anxiety disorder in 2017 after undergoing a multidisciplinary comprehensive assessment. These are not threadbare allegations. While Dr. Bonzani had counsel, Goshen Health and Goshen Hospital have not provided authority that counsel works as a panacea here, under these circumstances as alleged.

The argument that Dr. Bonzani has not presented a medical diagnosis or evidence to support these allegations isn't appropriate here—perhaps at summary judgment, but that isn't the procedural posture today. Dr. Bonzani has thus presented an actual controversy for declaration.

Turning to the second theory for declaration, Dr. Bonzani claims that he was fraudulently induced to sign the separation agreement. Goshen Health and Goshen Hospital say this claim should be dismissed because the agreement included a merger provision stating, "no parties are relying upon any oral representations or statements in executing this Agreement." Under Indiana law, when "two sophisticated parties engage in extensive preliminary negotiations, an integration clause may, in fact, reflect their mutual intention to abandon preliminary negotiations in favor of a complete and final statement of the terms of their agreement." *Prall,* 627 N.E.2d at 1377. There is an exception to this rule when fraud in the inducement is alleged. *See Ruff v. Charter Behavioral Health Sys.*, 699 N.E.2d 1171, 1175 (Ind. Ct. App. 1998). To establish fraud, Dr. Bonzani must show that (1) Goshen Health or Goshen Hospital made a material representation, (2) that was untrue or recklessly made, and (3) Dr. Bonzani relied on the representation, (4) which proximately caused him to suffer injury. *Circle Ctr. Dev. Co. v. Y/G Ind., L.P.,* 762 N.E.3d 176, 180-81 (Ind. Ct. App. 2002). In the case of fraudulent inducement, extrinsic evidence can help determine "the circumstances surrounding the execution of the contract." *Ruff,* 699 N.E.2d at 1175.

The fraud exception is limited when an integration clause is included in the contract. In *Circle Center*, 762 N.E.3d at 181, the court said, "Given the disclaimer, and without any allegation that the disclaimer itself was procured by fraud, [the plaintiff] has failed to demonstrate on the face of the pleadings that it had a *right* to rely on [the defendant's] alleged misrepresentations." In other words, when an integration clause is included in an agreement, a plaintiff claiming fraudulent inducement must allege fraud in the express terms of the contract (*i.e.,* the integration clause). *See Lee v. Countryside Auto Sales, LLC,* 2019 Ind. Ct. App. LEXIS 1072, 5 (Unpub. Aug. 20, 2019) (applying *Circle Center*);

13

*LDT Keller Farms v. Brigitte Holmes Livestock Co.,* 722 F.Supp.2d 1015, 1029 (N.D. Ind. 2010) ("Plaintiffs offer no evidence—or even argument—that the alleged fraud induced the execution of the *disclaimer*, and not just the contract itself.") (Cosbey, J.).

Dr. Bonzani pleads fraud in the inducement as to the whole contract, not specific to the waiver and release provision. In his response to Goshen Health and Goshen Hospital's motion to dismiss, Dr. Bonzani admits he is requesting this court to "make a determination on the validity of the [s]eparation [a]greement as a whole, not simply vary the terms or conditions." ECF 33 at 6. Accordingly, Dr. Bonzani cannot go forward with a fraudulent inducement theory to render the separation agreement unenforceable. Even so, he has not pleaded fraud with the particularity that would move his claim beyond speculative and to plausible. The motion to dismiss must be granted on this theory.

Turning to his last theory for declaration, Dr. Bonzani claims that the separation agreement is unenforceable because Goshen Health and Goshen Hospital first materially breached the confidentiality and non-disparagement provisions by submitting a misleading and factually inaccurate NPDB report. Dr. Bonzani contends that Goshen Health and Goshen Hospital are prohibited from seeking to enforce the contract, including the waiver and release provision barring his claims.

Under Indiana law, "a party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 875 (Ind. Ct. App. 1998); *Henthorne v. Legacy Healthcare*, 764 N.E.2d 751, 758 (Ind. Ct. App. 2002). "Whether a breach is material is generally a question of fact to be decided by the trier of fact," not the court. *Collins v. McKinney*, 871 N.E.2d 363, 375 (Ind. Ct. App. 2007). This case is no different. It is an issue for the trier of fact or summary judgment, not for the pleading stage.

In count two, Dr. Bonzani asserts a breach of contract claim against Goshen Health and Goshen Hospital for violating the confidentiality and non-disparagement provisions in the separation agreement. He points to two actions: Goshen Health and Goshen Hospital's delayed submission of the NPDB report, and their inclusion of allegedly disparaging, misleading, and factually inaccurate statements in the NPDB report. Goshen Health and Goshen Hospital defend by saying they were legally required to submit the NPDB report and that Dr. Bonzani verified its accuracy.

The separation agreement states: "Except as may be required under compulsion of law, Goshen Health shall not make any voluntary statement of any kind, or make any untrue statement while under any compulsory legal process, which is calculated to, or which reasonably will, damage the business or reputation of [Dr.] Bonzani." ECF 5 ¶ 8. Dr. Bonzani first claims that if the hospital was required under law to submit the NPDB report, it should have done so earlier than it did. His suspension of clinical privileges occurred on October 31, 2017 and became effective on December 1, 2017; thus, it should have submitted the report by December 31, 2017. *See* 45 C.F.R. §§ 60.5, 60.12(a)(1)(i) (requiring health care entity to report to NPDB within 30 days of triggering event). The hospital did not submit a report to the NPDB until January 23, 2018. Goshen Health and Goshen Hospital don't address this timing issue in their motion to dismiss.

Instead, they argue the NPDB grants them immunity: "Entities . . . shall not be held liable in any civil action filed by the subject of a report unless the . . . entity . . . submitting the report has actual knowledge of the falsity of the information contained in the report." 45 C.F.R. § 60.22. At this point, the motion to dismiss count two must be denied because Dr. Bonzani alleges that "Goshen Health and Goshen Hospital published false statements about Dr. Bonzani's medical practice in the NPDB [r]eport." ECF 19 ¶ 138. Specifically, the report states Dr. Bonzani was an immediate threat to the health and safety of patients—he says this is false. *Id.* ¶ 112. He claims they misclassified the adverse action—a suspension instead of a voluntary surrender of clinical privileges. Whether these opinions

15

or representations prove knowingly false to trigger a contract breach and evade regulatory immunity, the court cannot say on the pleadings alone, taking his allegations as true as the court must.

Dr. Bonzani offers other arguments about why the NPDB report was misleading, whether by omission or implication. He says the report omitted the fact that the hearing committee found in his favor. He also alleges the report misleadingly implied that the results of the peer review investigation were unfavorable to him. He points to a regulatory obligation to correct an NPDB report that contains errors or omissions. 45 C.F.R. § 60.6. The contract obligation, prohibiting the making of untrue statements, and the regulatory obligation may not be coextensive. Whether these omissions undergird a contract claim, and whether they serve to support a private right of action at all, the parties never address. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("not this court's responsibility to research and construct the parties' arguments"). Under these circumstances, and because the contract claim survives a motion to dismiss, the court won't parse each and every statement (or omission) at the pleading stage to determine which may support a breach of contract action. Suffice to say the claim survives a motion to dismiss regardless.[2]

In count three, Dr. Bonzani asserts a breach of contract claim against Goshen Hospital for violating its medical staff bylaws. Procedural rights created in a hospital's bylaws may constitute contractual rights. *Ray v. Saint John's Health Care Corp.*, 582 N.E.2d 464, 469 (Ind. Ct. App. 1991). "A staff physician is entitled to judicial review to determine whether the hospital has followed the procedural guarantees of its bylaws." *Id.*; *see also Pepple v. Parkview Memorial Hosp., Inc.*, 536 N.E.2d 274, 276 (Ind. 1989) ("hospital staff bylaws can constitute a contract between the hospital and its staff"). Dr. Bonzani claims the hospital breached its bylaws by refusing to give him an expedited hearing,

---

[2] Contrary to Goshen Health and Goshen Hospital's argument, Dr. Bonzani has sufficiently pleaded damages as a result of their alleged contract breach. Specifically, he alleges that he endured "great expense" to open a new medical practice in Chicago, Illinois and has not been able to procure staff privileges at any hospital or surgery center. ECF 19 ¶ 119. He also says the NPDB report alarmed health insurance carriers leading them to reject his applications for coverage. *Id.* These allegations are sufficient at this stage.

unilaterally ordering a second peer review report, and by broadening the reason for his suspension to include his entire operative history without affording him the opportunity to be heard on his entire history, and not just the incident with the patient's death.

Based on Dr. Bonzani's statements in response to the NPDB report, which Goshen Health and Goshen Hospital attached as an exhibit to their motion and which the court may consider because the response was incorporated by reference in Dr. Bonzani's amended complaint, *see Orgone Capital III, LLC v. Daubenspeck,* 912 F.3d 1039, 1044 (7th Cir. 2019), he withdrew his request for an expedited hearing. He can't then argue that Goshen Hospital breached its bylaws by denying him an expedited hearing. Dr. Bonzani offers no defense to this position (he just says he "disagrees"). The claim on that basis is dismissed.

While Dr. Bonzani cites no bylaw provision for the other two breaches, Goshen Hospital leaves these claims unaddressed in its motion to dismiss. The court won't dismiss these claims in count three without argument. *See APS Sports,* 299 F.3d at 631.

Next, in counts four and five, Dr. Bonzani asserts common law disparagement and defamation claims against Goshen Health and Goshen Hospital. The claims remain distinct under Indiana law—one protecting business interests and one reputation interests—and no one has argued that they have merged here. *See Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 381 (7th Cir. 2010); *see also Dave's Detailing, Inc. v. Catlin Ins. Co.*, 2013 U.S. Dist. LEXIS 108631, 19 (S.D. Ind. Aug. 2, 2013) ("Under Indiana law, disparagement is similar to defamation yet is still distinct.").

Goshen Health and Goshen Hospital instead defend by arguing that truth is a complete defense. *See Benson v. WANE-TV 15*, 106 N.E.3d 1055, 1056 (Ind. Ct. App. 2018). Alternatively, they say, even if the statements were false, they are entitled to a qualified privilege because the communication was made pursuant to a legal duty and in good faith to another party with a corresponding interest of duty. *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind. 1992). Whether a

17

statement is protected by a qualified privilege is a question of law, unless there is a factual dispute. *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind. Ct. App. 1983). Whether the statements were true or false, and whether they were made in good faith, are questions that cannot be resolved on the pleadings. Dr. Bonzani alleges the statements were false and malicious. These allegations enjoy the cloak of truth at the pleading stage. The court denies the motion to dismiss counts four and five.

Furthermore, at this juncture, Goshen Health and Goshen Hospital cannot seek dismissal on the basis of immunity under the Healthcare Quality Improvement Act and Indiana Peer Review Statute. The HQIA provides that a health care entity "shall not be liable in damages under any law of the United States or of any State . . . with respect to the action," 42 U.S.C. § 11111(a)(1), "unless such information is false and the person providing it knew that such information was false," 42 U.S.C. § 11111(a)(2). Again, Dr. Bonzani pleads falsity in the NPDB report and is entitled to discovery to determine whether Goshen Health and Goshen Hospital knew their statements were false. *See Levitin v. Nw. Cmty. Hosp.*, 64 F. Supp.3d 1107, 1121 (N.D. Ill. 2014).

Similarly, the hospital is not entitled to immunity now under the Indiana Peer Review Privilege. "Except in cases of required disclosure to the professional health care provider under investigation, no records or determinations of or communications to a peer review committee shall be: (1) subject to subpoena or discovery; or (2) admissible in evidence." Ind. Code § 34-30-15-9. This seems a question of discovery and admissibility, not dismissal. "This section provides that determinations of the peer review committee may not be discovered or admitted in a judicial proceeding absent written waiver." *Fridono v. Chuman*, 747 N.E.2d 610, 617 (Ind. Ct. App. 2001).

In addition, the privilege has its limitations. "Disclosure of the *results or consequences* of a proceeding (namely, the restrictions placed on a doctor's staff privileges) is not inconsistent with the purpose of the privilege: to encourage candor by the medical personnel on the committee." *Id.* at 618. The NPDB report was only triggered as a result of the peer review process—when Dr. Bonzani's

privileges were suspended. It arguably falls outside the scope of the peer review privilege. Goshen Health and Goshen Hospital cite no law applying this privilege to NPDB reports submitted after a peer review investigation is closed. Count five survives.

In count six, Dr. Bonzani pleads a separate fraudulent inducement claim mirroring the basis for declaratory judgment in count one. This claim cannot stand because he alleges generally that the whole contract is unenforceable due to fraud but does not specifically argue that the integration clause was fraudulently induced. *See Circle Ctr. Dev. Co.*, 762 N.E.3d at 180-81 (Ind. Ct. App. 2002). And again, the claim lacks the particularity required to comply with the rule and make the claim plausible to move beyond this pleading stage. Thus, count six is dismissed.

    C.  *Dr. Bonzani's Motion to Strike and Permission for Leave to File Surreply is Denied.*

Motions to strike are disfavored because they often serve only to delay ruling, *Heller v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), and are typically granted only when there will be true prejudice. *Talbot v. Robert Mathews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *see also Eppenger-Pollard v. Lock Joint Tube, Inc.*, 2005 U.S. Dist. LEXIS 45791, 3 (N.D. Ind. Sep. 9, 2005) (Miller, J.).

Dr. Bonzani asks the court to strike a portion of Goshen Health and Goshen Hospital's motion to dismiss titled "Plaintiff Cannot Find a Job Due to His Own Criminal Actions." This section may bear on damages and whether his actions have made finding work or procuring staff privileges problematic. The defendants made this argument in their motion to dismiss. There is no need to strike this section; even Dr. Bonzani references his 2016 misdemeanor conviction in both his amended complaint and response brief. The arguments also have no bearing on today's ruling, so a surreply would be superfluous. The motion to strike and for leave is denied.

## CONCLUSION

The court must decide whether Dr. Bonzani's claims are subject to a valid arbitration provision. Goshen Health and Goshen Hospital want to compel arbitration but say the employment

19

agreement containing the arbitration agreement was terminated. This record doesn't permit a finding that an enforceable arbitration provision survives the separation agreement or that claims fall within its scope, so the court DENIES Goshen Health and Goshen Hospital's motion to compel arbitration and stay litigation (ECF 26) and DENIES AS MOOT the duplicative motion (ECF 27).

The court DENIES IN PART and GRANTS IN PART Goshen Health and Goshen Hospital's motion to dismiss (ECF 28). Count six is dismissed, and counts one through five survive subject to the specific determinations made herein based on the pleadings. Dr. Bonzani's motion to strike and to file a surreply (ECF 37) is DENIED.

SO ORDERED.

May 11, 2020

*s/ Damon R. Leichty*
Judge, United States District Court