UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT BONZANI MD,

Plaintiff,

v.                                              CAUSE NO. 3:19-CV-586 DRL-MGG

GOSHEN HEALTH SYSTEM INC., *et al.*,

Defendants.

<u>OPINION & ORDER</u>

Dr. Robert Bonzani practiced urology at Goshen Hospital under an employment agreement with its parent, Goshen Health System, Inc. After a patient died during a procedure performed by Dr. Bonzani, Goshen Health suspended his surgical privileges. Not long thereafter, he signed a separation agreement with Goshen Health. Goshen Health and Goshen Hospital reported his suspension and resignation to the National Practitioner Data Bank (NPDB). In this suit, among other claims, Dr. Bonzani alleges that they knowingly included false and misleading statements in the NPDB report, which damaged his professional reputation and medical practice. Today the court must decide whether to grant a motion to dismiss a second amended complaint, and it does so only in part.

BACKGROUND

This case has a bit of a complex procedural history, but first the court paints the landscape of facts that root this suit. These facts emerge from the well-pleaded allegations in the second amended complaint, and they generally mirror those from the background section in the court's prior ruling on the first motion to dismiss because the factual allegations have changed little. The court must accept these facts as true for purposes of deciding the motion today.

In 2016, Dr. Bonzani began discussing with Goshen Health an opportunity to practice urology in Goshen, Indiana [ECF 80 ¶ 9]. On December 14, 2016, Dr. Bonzani and Goshen Health signed an

employment agreement [*id.* ¶ 16]. Goshen Hospital was not a signatory, though the agreement identified it as a subsidiary of Goshen Health [ECF 81 at 1]. Having privileges at Goshen Hospital was a condition of Dr. Bonzani's employment with Goshen Health [ECF 80 ¶ 14].

Dr. Bonzani began working for Goshen Health on March 15, 2017 [*id.* ¶ 20]. In the fall 2017, a patient died from complications during surgery [*id.* ¶ 31]. Goshen Hospital's Chief Medical Officer suspended Dr. Bonzani's surgical privileges [*id.* ¶ 34]. Goshen Hospital's Medical Executive Committee (MEC) formed an investigation committee to conduct the peer review process [*id.* ¶ 40]. Dr. Bonzani complied with this process by submitting recommendation letters, providing operative logs from other hospitals where he worked, and tendering proof of board certification [*id.* ¶ 41].

More than fourteen days into his suspension, Dr. Bonzani requested an expedited hearing, a right provided in the bylaws [*id.* ¶ 39]. On his own, he initiated a review of his work and found that, in his opinion, only nine of 96 cases were worth examining [*id.* ¶ 42]. The peer review process included sending information to an outside reviewer [*id.* ¶ 46]. Dr. Bonzani challenged the report on several grounds [*id.* ¶ 47]. The investigative committee agreed with Dr. Bonzani and ordered a new peer review report [*id.* ¶¶ 48-49].

That second peer review report underway, Dr. Bonzani appeared before a hearing committee to discuss the October 2017 incident [*id.* ¶ 54]. The hearing (rescheduled once) occurred 43 days after Goshen Hospital initiated the precautionary suspension [*id.* ¶ 51]. Dr. Bonzani was exonerated [*id.* ¶ 56]. The hearing committee recommended to the MEC that the precautionary surgical suspension be lifted [*id.*].

The MEC thereafter received the second peer review report, now critical of Dr. Bonzani, and decided to ignore the hearing committee's recommendation [*id.* ¶ 59]. The MEC scheduled a final meeting for January 9, 2018 [*id.* ¶ 60]. Seven days beforehand, officers at Goshen Health confronted Dr. Bonzani with the second peer review report and told him it was time to transition out of Goshen

Hospital [*id.* ¶¶ 62-63]. Dr. Bonzani had two options: voluntarily leave with severance pay or involuntarily leave without severance pay [*id.* ¶ 72].

On January 5, 2018, Dr. Bonzani's attorney emailed him a copy of the separation agreement from Goshen Health [*id.* ¶ 76]. Goshen Health told Dr. Bonzani that unless he signed the separation agreement before the MEC meeting on January 9, 2018, he would be immediately terminated with no severance pay [*id.* ¶ 79]. Dr. Bonzani signed the agreement on January 8, the day before he had been led to believe the MEC would find against him resulting in his involuntary termination [*id.* ¶ 80]. The separation agreement defined Goshen Health to include its subsidiaries, and contained provisions addressing waiver and release, confidentiality, and non-disparagement [*id.* ¶¶ 81-85].

After the agreement was signed, Goshen Health and Goshen Hospital filed a report with the National Practitioner Data Bank (NPDB) relating to Dr. Bonzani [*id.* ¶ 86]. The separation agreement made no mention of the NPDB report [*id.* ¶ 88]. Dr. Bonzani says the NPDB report contained false and misleading statements [*id.* ¶ 93]. He says Goshen Health and Goshen Hospital have known about the deficiencies, omissions, and misrepresentations in the NPDB report since January 2018 [*id.* ¶ 96].

To mitigate the damage, Dr. Bonzani submitted his own statement objecting to it [*id.* ¶ 99]. Despite his attempts to mitigate the damage, he wasn't able to find any work as a urologist and was forced to open his own medical practice in Chicago [*id.* ¶ 100]. He hasn't been able to procure staff privileges at any hospital or same-day surgery center [*id.*]. He says the NPDB report has alarmed health insurance carriers to the point where many have refused to admit Dr. Bonzani to their network of healthcare providers [*id.*].

Dr. Bonzani sued Goshen Health and Goshen Hospital. He filed his first complaint on August 1, 2019. He then filed an amended complaint on October 18, 2019. The amended complaint included six counts: (1) a request for declaratory judgment on the separation agreement's enforceability; (2) breach of the separation agreement; (3) breach of the medical staff bylaws; (4) disparagement; (5)

defamation; and (6) fraudulent inducement [ECF 19]. Goshen Health and Goshen Hospital moved to dismiss the amended complaint. On May 11, 2020, the court granted the motion in part, dismissing Dr. Bonzani's claim for declaratory judgment on the fraudulent inducement theory, his claim that Goshen Hospital breached its medical staff bylaws by denying him an expedited hearing, and his fraudulent inducement claim [ECF 39]. The rest of the claims survived [*id.*].

After the court's ruling, Goshen Health and Goshen Hospital filed an answer to the amended complaint [ECF 43]. The magistrate judge entered a scheduling order on October 1, 2020, and discovery ensued [ECF 46]. Since then, the parties have filed four motions to extend the discovery deadline, largely because the parties had been attempting to mediate [ECF 52; 54; 59; 103]. On October 8, 2021, Dr. Bonzani filed an uncontested motion to amend his complaint [ECF 78]. He sought to remove his claim for declaratory relief related to his mental capacity theory and fraudulent inducement theory [ECF 78 at 1]. He also sought to remove the fraudulent inducement claim [*id.*]. The magistrate judge granted the uncontested motion [ECF 79], and Dr. Bonzani filed his second amended complaint on November 1, 2021 [ECF 80].

The second amended complaint largely puts this case in the same place that it was in on May 11, 2020, except that Dr. Bonzani is no longer pursuing the theory that he lacked the mental capacity to enter the separation agreement and he is realleging that Goshen Hospital breached its medical staff bylaws by denying him an expedited hearing. The fraudulent inducement claim remains out.

Goshen Health and Goshen Hospital filed a motion to dismiss the second amended complaint for lack of jurisdiction and for failure to state a claim, seeking once again to dismiss all claims [ECF 84; 85]. Though Dr. Bonzani has alleged a litany of claims and the parties have tossed back and forth many arguments, there is largely one key issue that remains in this case: did Goshen Health and Goshen Hospital knowingly publish a false statement about Dr. Bonzani in the NPDB report? The court now grants the motion to dismiss in part.

STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has the power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

Under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). In conducting this inquiry, the court may "consider documents incorporated by reference in the pleadings." *Orgone Cap. III, LLC v. Daubenspeck,* 912 F.3d 1039, 1044 (7th Cir. 2019).

DISCUSSION

A.      *Standing.*

Goshen Health and Goshen Hospital argue that Dr. Bonzani lacks standing to bring this action. The United States Constitution confines the federal judiciary's power to "Cases" and "Controversies." U.S. Const. art. III § 2. For a case or controversy to exist, a plaintiff must have standing—an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 141 S. Ct. at 2203 (citation and quotations omitted). Standing thus implicates the court's jurisdiction.

Goshen Health and Goshen Hospital assert that Dr. Bonzani hasn't shown a causal connection between his alleged injury—his inability to secure a job or hospital privileges—and Goshen Hospital's NPDB report. In actuality, Dr. Bonzani alleges that, because of the NPDB report, he wasn't able to work as a urologist (until he opened his own medical practice) and wasn't able to procure staff privileges at any hospital or same-day surgery center [ECF 80 ¶ 100]. He alleges that the NPDB report alarmed health insurance carriers so much that many refused to admit him to their network of healthcare providers, further eroding his ability to care for patients [*id.*]. Goshen Health and Goshen Hospital may wish to argue that Dr. Bonzani's injury is more likely to have been caused by his history, but that cannot be decided based on a facial challenge at this procedural stage. The court must accept his allegations as true, *see Silha*, 807 F.3d at 174, and these allegations among the others that make his claims plausible suffice.

Goshen Health and Goshen Hospital didn't argue standing in their previous motion to dismiss, but the court is ever mindful of its independent duty to ensure its subject matter jurisdiction. *See Lowrey v. Tilden*, 948 F.3d 759, 760 (7th Cir. 2020); *see also* Fed. R. Civ. P. 12(h)(3). In deciding that

6

Dr. Bonzani's contract claim survived the previous motion to dismiss, the court said, "Contrary to Goshen Health and Goshen Hospital's argument, Dr. Bonzani has sufficiently pleaded damages as a result of their alleged contract breach." *Bonzani v. Goshen Health Sys., Inc.*, 459 F. Supp.3d 1139, 1155 n.2 (N.D. Ind. 2020). Dr. Bonzani pleads the same damages in his second amended complaint as he did in his amended complaint [ECF 80 ¶ 100; ECF 19 ¶ 119]. The court has already decided that Dr. Bonzani has alleged an injury that these defendants caused and that the court can remedy. *See TransUnion*, 141 S. Ct. at 2203. There isn't any reason to walk back that finding today on materially the same pleading, albeit amended.

The defense argues that Dr. Bonzani hasn't alleged an injury [ECF 85 at 6] and sets forth the plausibility standard for the court to rule on the motion to dismiss for lack of standing [*id.* 4], so addressing this facial challenge to subject matter jurisdiction should end there. *See Silha*, 807 F.3d at 174. But, even without expressly saying they are advancing a factual jurisdictional attack or requesting an evidentiary hearing, Goshen Health and Goshen Hospital then pivot and press the court to consider evidence outside the record in resolving the standing issue. *See Bazile*, 983 F.3d at 279. They request the court to consider the NPDB "Response to Your Self-Query" provided by Dr. Bonzani and dated September 17, 2021 [ECF 87, Ex. 1].

The summary section of this response shows that Dr. Bonzani has a history of malpractice settlements, license suspensions and probations, and criminal convictions [*id.* 3-4]. Also included in the summary is Goshen Hospital's suspension of clinical privileges, now at issue in this lawsuit. Goshen Health and Goshen Hospital argue that the only reasonable inference that can be drawn from Dr. Bonzani's second amended complaint is that his alleged damages were caused by other information in the response rather than any alleged falsehood. Though perhaps the defendants may explore this causation issue through discovery and later use this as a mitigation or dispositive argument, it isn't reason to throw out the case for lack of standing at the pleading stage. Dr. Bonzani

has alleged that he has suffered damages caused by the NPDB report submitted by Goshen Health and Goshen Hospital [ECF 80 ¶¶ 100-01]. This isn't a case where the operative complaint "fairly shriek[s] that there is no federal jurisdiction." *Bazile*, 983 F.3d at 278 (citation omitted). The court denies the motion to dismiss on the basis of standing.

      B.    *Declaratory Judgment: Failure to Tender (Count 1).*

The court turns next to the arguments for dismissal under Rule 12(b)(6). As before, Indiana's choice of law rules direct the court to apply Indiana substantive law, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323 (7th Cir. 1996), including to the contract claims because the separation agreement remains so governed [ECF 5 ¶ 10]. *See Bonzani*, 459 F. Supp.3d at 1151. Neither side argues for any other law. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

Goshen Health and Goshen Hospital ask the court to dismiss the declaratory judgment claim (count 1). Dr. Bonzani seeks a declaratory judgment that the separation agreement isn't enforceable because Goshen Health and Goshen Hospital first materially breached the confidentiality and non-disparagement provisions. The defense says he cannot seek a declaratory judgment because he failed to tender the $194,589.00 he received in exchange for his releases and waivers [ECF 82 ¶ 2].

"[O]ne of the most elementary principles of contract law . . . [is] that a party may not rescind a contract without returning to the other party any consideration received under it." *Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 260 (7th Cir. 1994) (collecting cases); *see also Am. Standard Ins. Co. v. Durham*, 403 N.E.2d 879, 881 (Ind. Ct. App. 1980) ("It is therefore basic that a party seeking rescission must return all consideration or benefits received under the contract.") (collecting Indiana cases). The tender of benefits must either precede the lawsuit, or in certain equity cases (which this case is in part) the complaint must at least contain an offer to restore the consideration. *See Fleming*, 27 F.3d at 261. Dr. Bonzani hasn't pleaded that he has done either one to make his claim plausible or

justiciable; and he never argues that his request for the court to declare the waiver and release provision void proves to be something other than a request for rescission. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (not court's job to develop party's argument).

Instead, Dr. Bonzani argues—within the context of the rescission doctrine—that he should be permitted to await the end of the case to tender these funds. He cites a report and recommendation from the Northern District of Illinois: "As this court reads *Fleming*, there are two important qualifications to its holding. First, certain statutes may override the tender back rule. Second, the return of funds conceivably can be deferred until the end of suit." *Mahaffey v. Amoco Corp.*, 1995 U.S. Dist. LEXIS 13766, 81 (N.D. Ill. Sept. 8, 1995).[1] In a one-sentence argument, Dr. Bonzani then latches on to this second qualification, but he passes over the case's clarifying language: "*Where adequate assurance is given*, it would seem that tender can even be deferred until the end of suit." *Mahaffey*, 1995 U.S. Dist. LEXIS 13766 at 83-84 (emphasis added). Dr. Bonzani has not pleaded any offer to restore the contract's consideration or any adequate assurance of it.

By statute, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (citation omitted). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). This discretion comes from the plain text of the Declaratory Judgment Act. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added); *see Med. Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010); *Envision Healthcare*, 604 F.3d at 986.

---

[1] No one says whether this report and recommendation was adopted by the Illinois district court, and the available electronic history fails to confirm it.

The phrase "case of actual controversy" within the Declaratory Judgment Act refers to those types of "Cases" or "Controversies" that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Disputes must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and they must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life*, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Dr. Bonzani's claim isn't suited to declaration without perfecting his request to rescind the separation agreement or offering adequate assurance. The claim also materially overlaps the breach of contract claim that survives today, leaving in place an adequate remedy without the need for duplication. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994). Accordingly, the court dismisses the declaratory judgment claim (count 1).

C.      *Breach of Contract—Separation Agreement (Count 2).*

Dr. Bonzani claims that Goshen Health and Goshen Hospital materially breached the confidentiality and non-disparagement provisions within his separation agreement. He says they breached the confidentiality provision by submitting the NPDB report that contained details about the agreement. He says they breached the non-disparagement provision by including false and malicious statements about him in the NPDB report.

The confidentiality provision generally prohibited the disclosure of the existence of or other details about the separation agreement. Dr. Bonzani never alleges what details about the separation

agreement were contained in the NPDB report. The report says "Dr. Bonzani resigned his clinical privileges from the Hospital" [ECF 83 at 2], but that never discloses that this occurred by way of a separation agreement or the details of that separation. Dr. Bonzani asserts that the report's narrative violated the confidentiality provision by including unnecessary details, such as the timing of his resignation and description of the type and timing of the hearing and peer review process he received. He never ties these details to the separation agreement. This claim—based on facts independent of those undergirding the non-disparagement theory—cannot survive then.

The non-disparagement provision in the separation agreement prohibited, except as required by law, any voluntary statement or false compulsory statement that was "calculated to, or which reasonably will, damage [Dr. Bonzani's] business or reputation" [ECF 82 at 6]. Goshen Health and Goshen Hospital say they were compelled by law to submit the NPDB report. They also argue that Dr. Bonzani never alleged that the report was calculated to or would reasonably damage his business or reputation. The second amended complaint plausibly addresses both points—for instance, alleging that these healthcare entities falsely called him an immediate threat to the health and safety of patients (even if compelled by law to submit a report) and alleging that his damages reasonably flowed from this and other false or misleading statements. *See Bonzani*, 459 F. Supp.3d at 1154 ("Whether these opinions or representations prove knowingly false to trigger a contract breach and evade regulatory immunity, the court cannot say on the pleadings alone, taking his allegations as true as the court must."). The court thus declines to dismiss this breach of contract claim.

D.      *Breach of Contract—Medical Staff Bylaws (Count 3).*

This count proceeds only against Goshen Hospital. In the second amended complaint, Dr. Bonzani alleges that Goshen Hospital breached its medical staff bylaws by (1) failing to provide him with an expedited hearing; (2) broadening the reasons for his suspension to include his entire operative history at Goshen Hospital; (3) not affording him the opportunity to request and receive a hearing on

this broader issue; and (4) unilaterally deciding to order a second peer review report from a known biased peer review company [ECF 80 ¶¶ 114-15].

Goshen Hospital is right that the second amended complaint never identifies which bylaw provision within 146 pages the hospital violated. Dr. Bonzani argues that the bylaws required compliance with the Health Care Quality Improvement Act (HCQIA), *see* 42 U.S.C. § 11101 *et seq.*, and this law required "adequate notice and hearing procedures" or other "fair" procedures for a physician in peer review proceedings, 42 U.S.C. § 11112. Even with this broader perspective, Dr. Bonzani has not pleaded facts that would make each of his bylaws claims plausible.

First, Dr. Bonzani conceded that he withdrew his request for an expedited hearing. The court concluded as much before. *See Bonzani*, 459 F. Supp.3d at 1155. Based on Dr. Bonzani's statements in response to the NPDB report, which the court may consider because the response was incorporated by reference in his second amended complaint, *see Orgone Cap.*, 912 F.3d at 1044, he withdrew his request for an expedited hearing. He cannot then argue that Goshen Hospital breached its bylaws by denying him an expedited hearing. The claim on that basis must again be dismissed. *See Bonzani*, 459 F. Supp.3d at 1155.

Second, Dr. Bonzani says Goshen Hospital breached its bylaws by broadening its reasons for suspension to include his entire operative history. Nowhere in his pleading or even briefing has he explained how the bylaws hamstrung the hospital from considering his conduct in total. Indeed, the bylaws permit the hospital to consider any "relevant matter upon which responsible persons customarily rely in the conduct of serious affairs" [ECF 80-1 at 127]. He never says he lacked notice. To the contrary, the second amended complaint explains that he received notice that his peer review would cover not only the one surgery when the patient died but also other cases [ECF 80 ¶¶ 44-45]. He also alleges that he had the opportunity to challenge the outside reviewer's report based on these cases [*id.* ¶ 47]—and, indeed, the bylaws permitted the submission of memoranda [ECF 80-1 at 127].

This suit was filed in August 2019, so he has not been without the tools of discovery over more than two years to be able to state his bylaw breaches not just plainly, but plausibly. *See* Fed. R. Civ. P. 8(a)(1); *Twombly*, 550 U.S. at 570. His pleading actually shows the opposite—the lack of any breach.

Third, Dr. Bonzani alleges that the hearing committee denied him the opportunity to address these other cases at a hearing [ECF 80 ¶¶ 54-55]. According to him, at this hearing the hospital pivoted because it was awaiting a second peer review report [*id.*]. The hearing committee thereafter recommended that his surgical suspension be lifted. This recommendation went to the MEC and to Dr. Bonzani on December 26, 2017, but was received by him on December 29, 2017, after the MEC met to consider increasing his reprimand from a surgical suspension to a formal hospital suspension [*id.* ¶¶ 57-59]. Dr. Bonzani says the MEC decided at that meeting to do so based on the second peer review report but then says the MEC scheduled a meeting more than a week later to make a "final decision" about his suspension [*id.* ¶¶ 60-61]. He received notice of this meeting on December 30, 2017 and thus his opportunity to be heard at the meeting on January 9, 2018 [*id.*]. Based on his own pleading, he was not deprived of notice or other fair procedures, even incorporating the HCQIA into this discussion, because he had the opportunity to be heard at the MEC level before its final decision. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (due process contemplates an "opportunity" for a hearing); *McGill v. Duckworth*, 944 F.2d 344, 354 (7th Cir. 1991), *overruled on other grounds as recognized by Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (due process "gives an *opportunity* for a hearing, which people can elect to forego"). It just so happens that he signed a separation agreement beforehand.[2]

---

[2] In briefing, Dr. Bonzani expands this claim slightly to say the MEC impermissibly delayed its decision based on the Goshen General Hospital Medical Staff Investigation, Hearing and Appeal Procedures Manual. Even if this were proper to consider as revision to his pleading, this manual merely contemplated that the MEC would act within 21 days after the investigative process concluded, and it did so based on the timing outlined in the second amended complaint. Even so, the manual permitted the MEC to defer its decision as well, saying 21 days "unless deferred."

Fourth, Dr. Bonzani alleges that Goshen Hospital breached its bylaws by ordering a second review report. At base, he points to nothing within the bylaws that precludes the hospital from conducting a second peer review process, but his allegations address more than that. He alleges that the hospital knew this second peer review company was biased and retained only to provide sham support for the MEC's decision contrary to the hearing committee's recommendation favorable to him. He alleges the company provides "decision support" rather than independent and unbiased peer review. His second amended complaint contains sufficient facts to make this claim plausible and to permit it to proceed [ECF 80 ¶¶ 65-68]. This is the only bylaw claim that survives this motion.[3]

E.      *Disparagement and Defamation (Counts 4 and 5).*

Dr. Bonzani claims that Goshen Health and Goshen Hospital defamed and disparaged him. Specifically, he alleges that "Goshen Health and Goshen Hospital published false statements about Dr. Bonzani's medical practice in the NPDB Report" [ECF 80 ¶¶ 118, 122]. Goshen Health and Goshen Hospital attack these claims on multiple grounds—administrative exhaustion, pleading standards, and immunity.

The claims for disparagement and defamation "remain distinct under Indiana law—one protecting business interests and one reputation interests—and [again] no one has argued that they have merged here." *Bonzani*, 459 F. Supp.3d at 1155 (citing *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 381 (7th Cir. 2010); *Dave's Detailing, Inc. v. Catlin Ins. Co.*, 2013 U.S. Dist. LEXIS 108631, 19 (S.D. Ind. Aug. 2, 2013)). Despite this difference, both claims require a showing of a false statement made by the defendant. *See Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014) ("Any statement actionable for defamation must not only be defamatory in nature, but false."); *Sanderson v. Ind. Soft Water Servs., Inc.*, 2004 U.S. Dist. LEXIS 15671, 21-23 (S.D. Ind. July 23, 2004) (Hamilton, J.)

---

[3] Goshen Hospital also argues that Dr. Bonzani waived this claim in the separation agreement, but the enforcement of that waiver cannot be decided at this pleading stage being ostensibly tied to the breach of separation agreement claim.

(recognizing injurious falsehood claims as disparagement claims under Indiana law). They also require a showing of malice. *See Miller*, 11 N.E.3d at 956; *Rain*, 626 F.3d at 381 (defamation and disparagement claims are distinct only in the types of interests they protect).

        1.     *Failure to Exhaust Administrative Remedies.*

Goshen Health and Goshen Hospital argue that Dr. Bonzani was required to exhaust administrative remedies before filing suit. Under 45 C.F.R. § 60.21(a), the subject of an NPDB report may dispute its accuracy. Administrative procedures exist for disputing a report with the reporting entity. 45 C.F.R. § 60.21(b). Congress delegated the authority to the Secretary of Health and Human Services (HHS) to develop these procedures. *See* 42 U.S.C. § 11136(2). Dr. Bonzani hasn't alleged that he complied with any dispute procedures before filing this lawsuit.

"Of 'paramount importance' to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds*, *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006) (citations omitted). The general rule is that parties must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144-45. But there are at least three broad sets of circumstances in which an individual's interests "weigh heavily" against requiring administrative exhaustion: first, when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action;" second, when the agency lacks power to grant effective relief; and third, when the agency is "shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146-48; *accord Robinson v. E. Carolina Univ.*, 329 F. Supp.3d 156, 171 (E.D.N.C. 2018).

The court begins its analysis by examining congressional intent. "[T]he Secretary shall, by regulation, provide for . . . procedures in the case of disputed accuracy of the information." 42 U.S.C. § 11136(2). Congress never said a physician or other licensed health care practitioner must follow

these procedures before filing suit related to an NPDB report. Nor did the HHS Secretary frame the dispute process as a mandatory pre-suit requirement. The regulation says the "subject of the report or a designated representative *may* dispute the accuracy of a report concerning himself, herself, or itself[.]" 45 C.F.R. § 60.21(a) (emphasis added); *see also Miller v. Huron Reg'l Med. Ctr., Inc.*, 145 F. Supp.3d 873, 886 (D.S.D. 2015) (noting that 45 C.F.R. § 60.21 "employs permissive language and does not mandate that the physician pursue an administrative remedy"). Goshen Health and Goshen Hospital point to what the subject *must* do if he chooses to dispute the accuracy of the report, *see* 45 C.F.R. § 60.21(b)(1), but that doesn't change the fact that a subject may—not must—dispute a report, *see* 45 C.F.R. § 60.21(a). Nothing from the text of the statute or regulation indicates that there is a mandatory exhaustion requirement.

Because Congress hasn't clearly required exhaustion, judicial discretion governs. *McCarthy*, 503 U.S. at 144. Dr. Bonzani argues that the second set of circumstances is important here—whether the agency lacks the power to grant effective relief [ECF 97 at 7]. The Secretary's power to review the accuracy of a report under 45 C.F.R. § 60.21 is limited. "The Secretary will only review the accuracy of the reported information, and will not consider the merits or appropriateness of the action or the due process that the subject received." 45 C.F.R. § 60.21(c)(1). "The Secretary does not act as a factfinder deciding whether incidents listed in the report actually occurred or as an appellate body deciding whether there was sufficient evidence for the reporting hospital to conclude that those actions did occur." *Leal v. Sec'y, U.S. Dep't of Health and Hum. Servs.*, 620 F.3d 1280, 1284 (11th Cir. 2010); *see also* U.S. Dep't of Health and Hum. Servs., *NPDB Guidebook* F-5 (Apr. 2015) ("The Dispute Resolution process does *not* include reviewing: The underlying reasons for the report, such as the merits of a medical malpractice claim or the appropriateness of, or basis for, other types of reports[.]").

Goshen Health and Goshen Hospital argue that Dr. Bonzani's best remedy would have come from the Secretary who could have determined that the use of adverse action code 1635 for voluntary

surrender of clinical privileges would have been more appropriate than code 1630 for suspension of clinical privileges, but Dr. Bonzani's claim rests on more than just the action code, but the basis for action code. The Secretary's authority under 45 C.F.R. § 60.21 seems not to extend to investigating the basis for the report. Because the Secretary lacked the power to grant Dr. Bonzani effective relief, the court declines to dismiss his lawsuit for lack of exhaustion.

Goshen Health and Goshen Hospital cite to cases from federal courts across the country that have required physicians to comply with the dispute process before filing suit. Dr. Bonzani responds that these cases are inapposite because the plaintiffs were seeking forms of relief that he hasn't asked for here. None of these cases change the court's ruling on this issue today.[4]

2.      *Pleading Standards and Immunity.*

Goshen Health and Goshen Hospital argue that the second amended complaint fails to plead that either healthcare entity made a maliciously false statement, but, even so, that Goshen Health ever made a statement at all. Without a false statement, both defendants seek immunity under the HCQIA.

First, Goshen Health and Goshen Hospital say Dr. Bonzani has pleaded facts from which the court must conclude that the NPDB report was true. They refer to the NPDB guidebook to provide background for what a reporting entity may submit as part of an NPDB report and why a report still must be submitted, even if late. The guidebook requirements ultimately don't bear on the question of

---

[4] For example, in *Satgunam v. Mich. State Univ.*, 556 Fed. Appx. 456, 465 (6th Cir. 2014), the Sixth Circuit decided that exhaustion applied to a claim about the reporting entity's eligibility to file an NPDB report, which is altogether different from a claim challenging the basis for a report. The other cited cases are also distinguishable. *See Straznicky v. Desert Springs Hosp.*, 642 F. Supp.2d 1238, 1246 (D. Nev. 2009) (exhaustion applied to claims about whether resignation triggered a legal duty to file an adverse action report); *Breda v. McDonald*, 153 F. Supp.3d 496, 503 (D. Mass. 2015) (dismissing due process claim under the APA for failure to exhaust because the doctor made no argument why continuing the administrative process through to HHS would be futile); *Brown v. Med. College of Ohio*, 79 F. Supp.2d 840, 846 (N.D. Ohio 1999) (holding that the HCQIA does not create a private right of action allowing a physician to challenge an NPDB report); *Simpkins v. Shalala*, 999 F. Supp. 106, 110-12 (D.D.C. 1998) (involving APA claim).

whether Goshen Health and Goshen Hospital included false information about Dr. Bonzani in their NPDB report.

The NPDB report lists as the "Basis for Action" an "Immediate Threat to Health or Safety (F1)" and as the "Classification Code" a "Suspension of Clinical Privileges (1630)" [ECF 83 at 1]. Goshen Health and Goshen Hospital say their coding merely describes the reporting entity's reason for taking the original adverse action—what they call the original precautionary suspension—but they cite no authority that their duty to report is triggered merely by an earlier action rather than the hospital's final decision. They acknowledge that Dr. Bonzani disagrees that his actions created an immediate threat to health or safety, but they say Goshen Hospital's obligation is not to report whether Dr. Bonzani was actually a threat to the health or safety of its patients—instead, Goshen Hospital is obligated to report to the NPDB its basis for the adverse action that led to the report. The report was submitted on January 23, 2018—after the investigation was completed and after Dr. Bonzani elected to resign under a separation agreement rather than proceed with the MEC's final decisionmaking.

The top of the report and Section C of the report both indicate that Goshen Hospital suspended Dr. Bonzani's clinical privileges and the basis for this action was "immediate threat to health or safety" [ECF 83 at 1]. Dr. Bonzani alleges in his second amended complaint that the NPDB report "wrongly states [he] was an immediate threat to the health and safety of the patients of Goshen Hospital" [ECF 80 ¶ 93].[5] He also challenges the adverse action code because it said his clinical privileges were suspended rather than that he voluntarily surrendered his privileges while under investigation [id. ¶ 94]. As the court said before, Dr. Bonzani's "allegations enjoy the cloak of truth at

---

[5] In response, Dr. Bonzani points out that he also pleaded facts to show there may have been other motivations for his suspension. He alleges at the time he signed his employment agreement, "there was a small but influential group of 'naysayer physicians' with predisposed hostility towards Dr. Bonzani" [ECF 80 ¶ 19]. He says he voiced concerns about staff competency to Goshen Health and Goshen Hospital but they made no changes to their procedures or staffing [id. ¶¶ 29-30]. He alleges that Dr. Murphy recommended that his surgical privileges be suspended following the complex robotic surgery, despite the fact that Dr. Murphy and another doctor failed as well [id. ¶ 33].

the pleading stage," *Bonzani*, 459 F. Supp.3d at 1156, and the use of these codes based on the report's timing, after Dr. Bonzani voluntarily separated from the hospital, begs the question whether the statements were in fact true when made. The court declines to dismiss any of the claims on this basis. Whether the report proves false cannot be decided against the pleading, at least not based on its plausible allegations. Additional factual context must await a later procedure.

Second, Goshen Health and Goshen Hospital argue that Dr. Bonzani has pleaded facts from which the court must conclude that the NPDB report was submitted without actual malice. "Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Shine v. Loomis*, 836 N.E.2d 952, 958 (Ind. Ct. App. 2005) (quotations and citations omitted). They say the HCQIA reporting requirements create a conditional privilege for NPDB reports such that they cannot be made with actual malice.

Goshen Health and Goshen Hospital quote the following language from *Morice v. Hosp. Serv. Dist. #3*, 430 F. Supp.3d 182, 215 (E.D. La. 2019): "[B]ecause a report to the National Practitioners Data Bank is made pursuant to HCQIA's statutory reporting requirements and is therefore conditionally privileged, it cannot be made with the requisite malice as would support a claim for defamation under Louisiana law." They refer to *Morice* as a "strikingly similar case." As Dr. Bonzani points out, they must have overlooked the footnote that corresponds with this language: "The condition on the privilege is that the reporter must not make the report knowing it to be false." *Id.* at 215 n.117. In *Morice*, the plaintiff never alleged that the report was known to be false when it was tendered to the NPDB. *See id.*

Unlike *Morice*, Dr. Bonzani alleges that "Goshen Health and Goshen Hospital [have] known about the deficiencies, omissions, and misrepresentations in the NPDB report since January 2018" [ECF 80 ¶ 96]. The report has a process date of January 23, 2018 [ECF 83 at 1]. Because Dr. Bonzani

alleges that Goshen Health and Goshen Hospital knew about the misrepresentations, which the court must accept as true at this stage, the court cannot say the report was made without actual malice as a matter of law, or that the report's submission qualifies for immunity under the HCQIA. *See* 42 U.S.C. § 11137(c); 45 C.F.R. § 60.22. This too is consistent with the court's prior ruling. *See Bonzani*, 459 F. Supp.3d at 1156 ("Dr. Bonzani pleads falsity in the NPDB report and is entitled to discovery to determine whether Goshen Health and Goshen Hospital knew their statements were false.").

Third, Goshen Health and Goshen Hospital argue that Dr. Bonzani's pleading is defective because it doesn't contain any allegation that Goshen Health published any defamatory or disparaging statement. Goshen Health and Goshen Hospital say the NPDB report clearly identifies the reporting party as Goshen Hospital. Though the report may identify Goshen Hospital, Dr. Bonzani alleges that both Goshen Health and Goshen Hospital submitted the report [ECF 80 ¶ 86], and he includes other allegations in his second amended complaint to show that both entities were involved in the circumstances relating to his suspension, separation, and the NPDB report's substance [*id.* ¶¶ 2-4, 14-16, 23, 27-36, 45, 52-53, 62, 65-66, 74-75, 81, 86-87, 92, 96-98]. Dr. Bonzani alleges that employees of both Goshen Health and Goshen Hospital drafted the report [*id.* ¶¶ 86-87]. Undisputed facts may turn out to show these allegations to be inaccurate, but at this stage the court cannot parse the allegations in the defense's favor, not when the allegations plausibly establish that both entities—through shared employees or shared management—jointly prepared and tendered the report. The court thus denies the motion to dismiss counts 4 and 5.

CONCLUSION

Accordingly, the court GRANTS IN PART the motion to dismiss [ECF 84] and DISMISSES Dr. Bonzani's declaratory judgment claim (count 1), his contract claim based on the separation agreement except as to the non-disparagement provision (count 2), and his bylaws claim except for Goshen Hospital's retention of an allegedly biased second peer review provider (count 3). Dr.

Bonzani's claims for disparagement and defamation (counts 4 and 5) survive at this stage. The court DENIES IN PART the motion to dismiss accordingly. In addition, the court GRANTS the motion to seal [ECF 86].

SO ORDERED.

March 10, 2022                                    s/ Damon R. Leichty
                                                 Judge, United States District Court