UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT BONZANI MD, | |
| Plaintiff, | |
| v. | CASE NO. 3:19-CV-586-DRL-MGG |
| GOSHEN HEALTH SYSTEM INC, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Pending and ripe before the Court are three motions to compel filed by Plaintiff, Robert Bonzani, M.D. [DE 88, 95, 112]. In a Joint Status Report filed on June 15, 2022, the parties explained that two general topics raised in the pending motions to compel remain in dispute: (1) information related to Defendant Goshen Hospital Association's ("Goshen Hospital's") peer review of Dr. Bonzani; and (2) historical information related to the Hospital's peer review of other providers. [DE 125 at 1–4]. The parties also report that Dr. Bonzani has withdrawn his request for communications between Defendants' employees and legal counsel. [*Id.* at 4]. At a video motion hearing before the undersigned on June 22, 2022, the parties presented oral argument to augment their briefing of the three motions to compel[1]. [DE 126]. As discussed below, Dr. Bonzani's motions to compel are granted in part and denied in part.

---

[1] The parties' Joint Status Report also indicated that information related to or derived from Dr. Bonzani's recordings of conversations with employees of NorthGauge, a non-party peer review vendor, remains at issue. The undersigned heard argument at the June 22nd video motion hearing on the recordings issue raised in Defendants' Combined Motion for Protective Order, to Exclude, and to Strike [DE 119], which will be addressed in a separate Report & Recommendation. [*See* DE 127 (referring the Combined Motion to the undersigned for a report and recommendation)].

I. **RELEVANT BACKGROUND**

Dr. Bonzani initiated this lawsuit after a series of events led him to resign from practice at Goshen Hospital. Dr. Bonzani worked at Goshen Hospital under an employment contract with the Hospital's parent, Goshen Health System, Inc. After the death of one of Dr. Bonzani's patients during a surgical procedure, Goshen Hospital suspended his surgical privileges and initiated an investigation into the surgical event. The Hospital also formed an Investigative Committee charged with initiating a Peer Review of Dr. Bonzani. In the course of the Peer Review, Goshen Hospital requested a Peer Review report from an outside peer review company, NorthGauge.

Based at least in part upon the Peer Review reports, Goshen Health gave Dr. Bonzani the option to voluntarily resign or face involuntary termination. Dr. Bonzani chose to resign and signed a Separation Agreement. The Separation Agreement included confidentiality and non-disparagement provisions. After Dr. Bonzani's resignation, Goshen Health and Goshen Hospital submitted a report to the National Practitioner Data Bank ("NPDB") that Dr. Bonzani alleges contains false and misleading statements about the effects of his medical care on patients, procedural events surrounding his suspension and resignation, findings during the Peer Review investigation, and events that did not need to be reported under the applicable law. These allegations led Dr. Bonzani to bring defamation and disparagement-related claims in this lawsuit[2]. In defense, Defendants raised an immunity defense available

---

[2] The operative claims in Dr. Bonzani's Second Amended Complaint are Count II—Breach of Contract against Goshen Health and Goshen Hospital arising from the "No Disparagement" provision in the

2

under the federal Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101 *et seq*.

In discovery, Dr. Bonzani served requests for production on Defendants and posed deposition questions seeking information regarding the Peer Review process he experienced at Goshen Hospital. Defendants withheld responsive information asserting the peer review privilege established in the Indiana Peer Review Act ("IPRA"). Dr. Bonzani also served interrogatories upon Defendants asking for access to information from peer review proceedings imposed upon other providers during a ten-year period from January 2008 through January 2018. Defendants withheld information responsive to these requests arguing lack of relevance and privilege pursuant to the IPRA.

Unable to resolve these disputes, Dr. Bonzani filed the three motions to compel now before the Court.

## II.   ANALYSIS

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). "The party resisting such a motion bears the burden to show why a particular discovery request is improper" and must do so with specificity. *E.F. Transit, Inc. v. Ind. Alcohol & Tobacco Comm'n*, No. 1:13-cv-01927-WTL-MJD, 2015 WL 1013475, at

---

Separation Agreement; Count III—Breach of Contract against Goshen Hospital alleging a "sham peer review" and breach of bylaws; and Count IV—Disparagement and Defamation. [*See* DE 80, 110].

*2 (S.D. Ind. Mar. 9, 2015); *see also Hills v. AT&T Mobility Servs., LLC*, 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D. Ind. July 22, 2021). "When the party resists on the basis of privilege, that party must demonstrate both that the privilege applies and that it has not been waived." *E.F. Transit, Inc.*, 2015 WL 1013475, at *2 (example citations from N.D. Ind. and N.D. Ill. omitted). In the case of overly broad discovery requests or less than apparent relevancy, "the requesting party must establish relevancy." *Vajner v. City of Lake Station, Indiana*, No. 2:09-cv-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

Nevertheless, this Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines*, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

    **A.**    **Information Related to Goshen Hospital's Peer Review of Dr. Bonzani**

Defendants have objected to producing information regarding Dr. Bonzani's Peer Review in response to his First and Third Requests for Production; his deposition questions to five deponents, including Dr. Larry Allen who served as Goshen Hospital's Chief Medical Officer at relevant times; and his request for documents reviewed by Defendants' retained expert. Defendants have not, however, established that the peer review privilege they invoke applies to this information.

To start, the parties disagree as to whether Indiana's peer review privilege, established through the Indiana Peer Review Act ("IPRA"), or federal common law

4

govern the application of the peer review privilege in this case. Fed. R. Evid. 501 makes clear that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." State law provides the rule of decision for all of Dr. Bonzani's remaining claims against Defendants. Therefore, the IPRA presumably governs the peer review privilege in this case.

The IPRA establishes that "[a]ll proceedings of a peer review committee are confidential" and that "[a]ll communications to a peer review committee shall be privileged communications." Ind. Code § 34-30-15-1(a)–(b). Limited exceptions to this peer review privilege are also delineated in the statute allowing for disclosure in certain situations. Dr. Bonzani argues against application of the IPRA based on Defendants' assertion of immunity under the federal HCQIA.

The federal common law of privilege governs in cases involving federal claims even when there is a pendent state law claim. *Mattice v. Mem'l Hosp. of S. Bend*, 203 F.R.D. 381, 384 (N.D. Ind. 2001) (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981). But here, all of Dr. Bonzani's remaining claims arise out of state law, not federal law. Thus, Dr. Bonzani's grounds for applying federal privilege law based on Defendants' federal affirmative defense is tenuous as best. Even so, both the IPRA and federal common law dictate disclosure of Dr. Bonzani's peer review information in discovery as discussed below.

The IPRA's peer review privilege is not absolute. For instance, the IPRA's peer review privilege does not protect information that is "otherwise discoverable or admissible from original sources" from disclosure during discovery just because it was

5

part of peer review proceedings. *Id.* § 34-30-15-3(a). The IPRA also authorizes access to peer review information for health care providers subjected to peer review proceedings. Specifically, the IPRA states that "[a] professional health care provider under investigation shall be permitted at any time to see any records accumulated by a peer review committee pertaining to the provider's personal practice."[3] *Id.* § 34-30-15-4.

The parties here dispute the scope of this provider exception based upon the phrases "under investigation" and "at any time" in the statute. Defendants acknowledge that health care providers are entitled to their own peer review information, but argue that the words "under investigation" limit the timing of such disclosure to the period of time while the investigation is active. In other words, Defendants contend that Dr. Bonzani is not entitled to his peer review records now, after the investigation has concluded, even though he was entitled to those same records during the pendency of the investigation. Dr. Bonzani, on the other hand, argues that the phrase "at any time" is the only temporal limitation in the statute—and that is essentially an unlimited temporal limitation in favor of a health care provider who was subject to peer review.

Canons of statutory construction require that all words and phrases in a statute be interpreted to give them full effect. Here, Defendants' interpretation limiting the temporal window for providers' access to their own peer review records imports meaning not found in the language of the statute. The statute's use of the phrase "a

---

[3] Otherwise, "no records or determinations of or communications to a peer review committee shall be subject to subpoena or discovery . . . in any judicial or administrative proceedings . . . without a prior waiver executed by the committee." *Id.* § 34-30-15-9.

professional health care provider under investigation" merely defines which health care providers may be given access to peer review records. It cannot be viewed as a temporal limitation because the modifying phrase "under investigation" would nullify the subsequent phrase "shall be permitted at any time." In a more practical sense, interpreting "under investigation" as a temporal limitation invites an extreme limitation on a provider's due process rights by constricting his opportunity for recourse to challenge the peer review process as applied to him.

Thus, the statutory exception to the peer review privilege for health care providers under investigation precludes disclosure of peer review records to anyone other than the health care provider at issue in a particular peer review but does not limit when a provider can access his own records. Accordingly, Dr. Bonzani is entitled to the information generated as part of his Peer Review investigation.

Application of federal privilege law would also lead to the same conclusion. "A privilege for peer review materials has no . . . historical or statutory basis" in federal common law. *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 195 (1990); *Nilavar v. Mercy Health Sys.-W. Ohio*, 210 F.R.D. 597, 604 (S.D. Ohio 2002). Federal courts assess whether to recognize state evidentiary privileges in federal cases on a case-by-case basis after balancing competing policies. *Memorial Hospital*, 664 F.2d at 1061; *see also, e.g., U.S. ex rel. Roberts v. QHG of Ind., Inc.*, 1998 WL 1756728, at *2 (N.D. Ind. Oct. 8, 1998). Such decisions require weighing "the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of

the case." *Memorial Hospital*, 664 F.2d at 1061–62 (internal quotations omitted). However, when the federal interest in a case is important and the peer review evidence is central to the claims at issue, application of a peer review privilege may not be appropriate. *See Roberts*, 1998 WL 1756728, at *3.

Here, Dr. Bonzani's claims are directly related to how his peer review was conducted, including the content of and intent behind the NPBD report Defendants submitted based on information gleaned during Peer Review. Moreover, the HCQIA invoked by Defendants does not explicitly provide for a peer review privilege. As such, the HCQIA appears consistent with the principle that discovery of even confidential information is warranted when it is relevant to a claim or defense explicitly raised in the case. As Dr. Bonzani's peer review proceedings are central to the claims at issue in this case and the HCQIA suggests a federal interest through the immunity defense at issue here, disclosure would also be favored under federal privilege law.

Thus, Defendants have not shown that the peer review privilege applies to information related to Dr. Bonzani's own peer review investigation and generated during the peer review process. To the extent that good cause justifies protecting this information from public disclosure, the Court will entertain a motion for a protective order. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544 (7th Cir. 2002).

### B.     Historical Information Related to the Peer Review of Other Providers

Dr. Bonzani's requests for historical information related to Goshen Hospital's peer review of other providers are protected by the peer review privilege established in

the IPRA. As discussed above, the IPRA's provider exception only entitles Dr. Bonzani to his own peer review records, not those of other health care providers.

Moreover, Dr. Bonzani's briefing on the issue and his attorney's argument at the June 22nd hearing are inconsistent and therefore fail to establish relevance. In his briefing, Dr. Bonzani suggested that he was interested in what categories Defendants assigned to other providers in NPDB reports so he could compare those proceedings and outcomes to the NPDB report Defendants submitted about him. Yet at the hearing, after Defendants' counsel indicated that no other NPDB reports had been submitted in the relevant ten-year window, Dr. Bonzani's counsel argued that the requested historical information could provide insight into why Defendants did not submit any other NPDB reports. By shifting goals midstream, Dr. Bonzani reveals that his requests for historical information are more of a fishing expedition than anything else.

Nevertheless, general information about Goshen Hospital's peer review process and outcomes of particular peer review proceedings is not protected by the IPRA. First, the peer review privilege only protects communications to, records of, and determinations of the "peer review committee." Ind. Code § 34-30-15-1; *see also id.* § 34-6-2-99 (defining "peer review committee"). Therefore, communications and records related to peer review held by medical staff who implement a peer review committee's findings, but did not serve on the committee or otherwise participate in the proceedings, are not privileged. *See Doe v. St. Joseph's Hosp. of Ft. Wayne,* 113 F.R.D. 677, 679 (N.D. Ind. 1987).

Second, the statute explicitly authorizes disclosure of final actions resulting from a peer review by "the governing board of a hospital" and a peer review committee's "records, communications, and determinations to a state agency for purposes of patient safety or health care quality. *Id.* § 34-30-15-1(d)(1), (e)–(f). Thus, individuals who were not members of the peer review committee, such as hospital administrators, are not subject to the peer review privilege and can disclose information from their personal knowledge or in their possession about the Hospital's peer review process and outcomes from other peer review proceedings.

Therefore, Dr. Bonzani may serve interrogatories upon Defendants inquiring as to how many peer review committees were convened by Defendants in the relevant ten-year period, and the outcomes of those committees' work, even though he is not entitled to any of the historical files from the peer review committees.

### III. CONCLUSION

For the reasons discussed above,

(1)   Plaintiff's First Motion to Compel [DE 88] is **DENIED IN PART**;

(2)   Plaintiff's Second Motion to Compel [DE 95] is **DENIED AS MOOT** as to the attorney-client privilege issues and **GRANTED** as to information related to Goshen Hospital's peer review of Dr. Bonzani; and

(3)   Plaintiff's Third Motion to Compel [DE 112] is **GRANTED**.

Defendants are **ORDERED** to serve complete responses to the written discovery requests at issue no later than **July 15, 2022**. The deadline for the close of all discovery is **EXTENDED** until **August 12, 2022**, for the limited purposes of production consistent with this Order and follow-up depositions. The dispositive

motion deadline is therefore **EXTENDED** until **September 12, 2022**. Consistent with the mandate of Fed. R. Civ. P. 1 to secure a just, speedy, and inexpensive resolution of this action, the parties should anticipate that additional extensions of these case management deadlines are not likely to be granted absent a showing of circumstances beyond the control of the parties and their inability to negotiate those circumstances in the exercise of due diligence.

    **SO ORDERED** this 5th day of July 2022.

                                              s/Michael G. Gotsch, Sr.
                                              Michael G. Gotsch, Sr.
                                              United States Magistrate Judge